SHIPPERS' COMPRESS CO. v. NORTHERN ASSUR. CO. (No. 340.) *

(Court of Civil Appeals of Texas. Beaumont. Jan. 23, 1919. On Motion for Rehearing, Feb. 12, 1919.)

1. APPEAL AND ERROR ☞742(2) — ASSIGNMENTS OF ERROR.

An assignment that the court's finding was not supported by evidence, and an assignment that the court erred in its conclusion of law as to a certain matter *held* to deal with entirely different legal propositions, and to be improperly grouped.

2. INSURANCE ☞132—INSURANCE BROKERS—SUBSTITUTION OF INSURERS.

Where one desiring tornado insurance expressed his wish to a general agent for several companies, the agent was authorized to substitute a binder in one insurance company in lieu of a binder in another insurance company, where the insured had not been advised that any company had been selected.

3. INSURANCE ☞129—INSURANCE BROKERS—DUTY OF BROKER.

A general agent for several insurance companies owes the duty, to one applying for insurance without naming a company, to use his discretion in securing a company that will carry the risk, and to furnish insurance about which there will be no question.

**4. CUSTOMS AND USAGES ⬯12(2)—KNOWLEDGE OF INSURED.**

Where one desiring insurance applied to a general agent for a number of companies for insurance, without naming any company, he was chargeable with knowledge of a general custom to the effect that, when a binder was made in one company and no notice of the name of the company was given to the insured, the agent placing the binder could substitute one company for another without communicating with the insured.

**5. PRINCIPAL AND AGENT ⬯99—APPARENT SCOPE OF AUTHORITY—BASIS—ESTOPPEL.**

The theory of apparent scope of authority in the law of agency is based upon the rule of estoppel, to the effect that, where a principal has led the other to believe that the agent had authority to act, such principal cannot later say that such agent was without authority, and such rule is based upon equity.

**6. PRINCIPAL AND AGENT ⬯119(1)—APPARENT AUTHORITY—BURDEN OF PROOF.**

In an action against a principal, where actual authority does not exist, the burden is upon plaintiff to bring himself within the rule of apparent authority.

**7. APPEAL AND ERROR ⬯1071(2)—HARMLESS ERROR—CONCLUSIONS OF LAW.**

In an action against a principal, where the evidence upon the question of authority of the agent was undisputed, the failure of the court to file his conclusion of law upon the question of authority was not reversible error.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by the Shippers' Compress Company against the Northern Assurance Company. Judgment for defendant, and plaintiff appeals. Affirmed.

R. W. Franklin, of Houston, for appellant. Thompson, Knight, Baker & Harris, of Dallas, for appellee.

BROOKE, J. Shippers' Compress Company, plaintiff below, alleged in its petition, in effect, the making by defendant and the plaintiff of a contract of tornado insurance for $20,000, covering the cotton sheds of plaintiff, situated on its compress property in the city of Houston, from 12 o'clock noon August 16, 1915, until 12 o'clock noon of August 16, 1916; that on or about August 16, 1915, after such insurance had been taken out, a tornado or windstorm struck the sheds mentioned and damaged them to the amount of $4,300; that due notice was given to its agents of the loss, and that such agents inspected the loss and instructed the plaintiff to repair the damages and send the bill to the defendant; that, in accordance with such instructions, plaintiff caused such damage to be repaired at a cost of $4,300, and that the defendant failed, upon demand, to pay the damages sustained, and denied liability for the loss; that no policy had been delivered, but plaintiff was ready to pay the premium.

Defendant answered by general demurrer and by general denial, and alleged, among other things, that it had not at the time named in plaintiff's petition, nor at any time prior thereto, applied for or received any permit or authority from the proper officer of the state of Texas to engage in the business of writing tornado insurance; that it obtained no license or permit from the state of Texas for Rice & Belk to act for it in any such matters; that it had no policies or contract forms for engaging in any such business, and had furnished no policies or contract forms to said Rice & Belk for acting for it in the tornado business, and had never authorized or empowered said Rice & Belk to act for it or bind it in making any such business or issuing any such policies, all of which want of authority was well known both to plaintiff and said Rice & Belk; that defendant was, at the time named in plaintiff's petition and prior thereto, engaged in the fire insurance business, making and issuing contracts in favor of parties against loss by fire to property in the state of Texas, and that Rice & Belk were its agents at Houston, Tex., authorized to make contracts of insurance against loss by fire; that defendant had no premium fixed or arranged for tornado business, and there was no usual or customary rate in force or effect by this defendant; that the said Rice & Belk had no power or authority to act for or bind this defendant in any matter connected with any tornado loss, whether in the making of policies or contracts or in inspecting premises therefor, or in adjusting any such losses, nor did they, or either of them, have any power or authority to bind this defendant in any manner connected with the matters set out in plaintiff's petition, all of which was to the plaintiff well known; that upon information defendant alleges that some time on August 16, 1915, plaintiff did undertake to procure, through Rice & Belk, insurance of some kind against tornadoes, and to that end 'phoned Rice & Belk and asked that $20,000 worth of insurance be granted in favor of the plaintiff upon some property, which is alleged to be other and different from the property described in plaintiff's petition; that at said time Rice & Belk did not represent defendant in the matter of insuring against tornadoes, and defendant was not engaged in such business in the state of Texas, as was known to plaintiff; that Rice & Belk did not advise plaintiff that they would place its insurance with defendant; that some time during the day of August 16, 1915, a telegram was sent by Rice & Belk to the defendant, offering a line of $20,000 tornado insurance on plain-

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tiff's property, which telegram did not reach defendant until the succeeding day, August 17, 1915, long after plaintiff's property was damaged; that, on receipt of this telegram, defendant, in ignorance that any damage had occurred, wired declining the risk; that it has a representative in this state named Newt M. Smith, but that said Smith, at the time set out in plaintiff's petition and at all times prior thereto, was without any power or authority to approve any such contract of insurance as set out in plaintiff's petition, and without power or authority, either from this defendant or the state of Texas, to act for the defendant in the making, ratifying, authorizing, or approving of tornado insurance, and was without authority to ratify or approve the issuance of any such policy or contract; that said Smith did not attempt to so ratify or approve any such contract, but, on the contrary, expressly notified and advised said Rice & Belk that they were without authority to bind the Northern Assurance Company in any contract insuring against loss or damage by cyclone, tornado, or windstorm in the state of Texas, and that said Northern Assurance Company was without such authority, and that Smith, as such agent of the Northern Assurance Company, was without authority to authorize or ratify any such contract, agreement, or policy, and further notified said Rice & Belk, in so far as they had taken any steps to undertake to place said risk with the Northern Assurance Company, that they must undo their acts, and, if they desired to protect plaintiff against loss from tornado, windstorm, or cyclones, it must be placed in some other insurance company authorized to conduct such business and engaged in the prosecution of such business, and that same could not and would not be carried by the defendant, and such notice was prior to any loss on plaintiff's property; that following this notice from the said Newt M. Smith, Rice & Belk, not theretofore having taken any steps to bind the defendant, undertook to place and did place said insurance, as was ordered, with the Commercial Union Insurance Company, a corporation engaged in the business at Houston, and in the state of Texas, and elsewhere; that Rice & Belk were its duly authorized and empowered agents to make contracts on its behalf, having all the necessary forms and supplies for that purpose; that Rice & Belk had not notified plaintiff that they had or would attempt to bind defendant, and that, long prior to any notice of damage from the storm to the property of plaintiff, said Rice & Belk undertook to place and did place said line of insurance, if same was ever placed, in said Commercial Union Assurance Company, and notified said company by wire of such placing prior to the injury and damage set out in plaintiff's petition; that until after the storm plaintiff had

not been advised or notified that its insurance was placed in any particular company or companies; that at the time plaintiff 'phoned Rice & Belk they were the agents of a number of companies. By supplemental answer defendant alleged that Rice & Belk did not have authority to place said insurance for the protection of plaintiff with the defendant company, and following the general custom prevailing in the city of Houston authorizing same, and in carrying out the instructions of the plaintiff asking that the insurance be granted it, did create and make in plaintiff's favor a contract on plaintiff's behalf with the Commercial Union Assurance Company, of which said Rice & Belk were duly authorized and constituted agents; that said Rice & Belk did thereby, and intended thereby, to relieve entirely and wholly defendant from any embarrassment or connection therewith, and of any attempted contract sought to be made with defendant on plaintiff's behalf.

The case was tried before the court without a jury, and at the conclusion of the evidence the following findings and conclusions were filed by the court:

## "Findings of Fact.

"(1) On and prior to August 16, 1915, K. E. Womack was the secretary and treasurer of the Shippers' Compress Company and had the insurance matters of said company in his charge.

"(2) In the forenoon of August 16, 1915, K. E. Womack telephoned the office of Rice & Belk, and secured telephone connection with Craig C. Belk, and asked them to place $20,000 tornado insurance on the 'sheds' of the Shippers' Compress Company for one year.

"I find that the Shippers' Compress had five open sheds, numbered A, B, C, D, and E, and the press room on the Sanborn Insurance Map, and that Craig C. Belk was familiar with said sheds, knew their location and construction, and knew that the building marked 'Press Room' was an open shed, and that sheds C, D, and the 'Press Room' shed made practically one shed, being connected, and surrounded on three sides the compress building, and I find it was the intention of both parties to insure said sheds A, B, C, D, E, and the 'Press Room' in the sum of $20,000 against loss by tornado.

"(3) Rice & Belk, a firm composed of Craig C. Belk and David Rice, and their predecessors, had been for 30 years agents of the Northern Assurance Company for writing fire insurance in Houston and vicinity.

"(4) That on August 16, 1915, Rice & Belk were the agents of the Commercial Union Assurance Company and the Delaware Underwriters' Insurance Company, and were authorized to write tornado insurance for their account.

"(5) During the month of August, 1915, the Northern Assurance Company had a permit from the commissioner of insurance of the state of Texas to write fire insurance, and Rice & Belk had a commission from the state as defendant's agents, to write fire insurance.

"(6) Prior to November, 1915, the defendant, Northern Assurance Company, did not have any permit from the commissioner of insurance of

the state of Texas to write tornado insurance, nor had such company, prior to such date, written any tornado insurance, nor had such company, prior to such date, written any tornado policies in Texas, and had no supplies, policies, or other forms for making tornado contracts, nor did Rice & Belk have any commission issued by the commissioner of insurance authorizing them to write tornado insurance for said company.

"(7) On August 16, 1915, the Northern Assurance Company was authorized under its charter to write tornado insurance, and secured a permit about November 1, 1915, from the commissioner of insurance of Texas to write tornado insurance in the state of Texas.

"(8) On August 4, 1915, the Northern Assurance Company mailed Rice & Belk the following circular letter, which was received in due course of mail prior to August 16, 1915:

" 'Northern Assurance Company, Ltd.
          " 'New York, 4th August, 1915.

     " 'Tornado Windstorm Insurance.

" 'To Our Agents:

" 'We have concluded to take up the writing of tornado insurance. Our methods will not vary essentially from those of other well-managed companies that are now writing that class of insurance. We shall not write tornado insurance on structures that are open nor on standing grain and crops. In the seacoast counties we shall keep away some distance from the sea borders. Our limits will undoubtedly be acceptable to our agents who do this class of business. The object of this initial communication is to inquire whether you can give us some tornado business on a good class of substantial structures and would like us to send you supplies.

" 'Awaiting your response with much interest, I am        Yours very truly,
          " 'George W. Babb, Manager.'

"(9) Capt. Smith, the state agent of the Northern Assurance Company, came into the office of Rice & Belk prior to August 16, 1915, and after August 4, 1915, and discussed tornado insurance generally, at which time he had with him rate sheets of the Southeastern Tornado Insurance Bureau.

"(10) It was the universal custom on August 16, 1915, in the insurance business in the city of Houston (and throughout the state of Texas) for the agent not to tell the assured the name of the company in which said insurance would be placed, but that the agent would select the company in which to place the insurance.

"(11) It was on August 16, 1915, and prior thereto and since said date, the universal custom, in the city of Houston and throughout the state of Texas, that when the insurance agent had not issued a policy of insurance and had not advised the assured of the name of the company in which his insurance had been placed, although he had placed a binder for the same, that the agent was authorized to and did substitute for said insurance in that company insurance in any other company that he desired to place the same in, and that when this was done the first company did not issue the policy, and that the second company's policy was the one insuring the property.

"(12) It was the custom on August 16, 1915, of all insurance agents in the city of Houston to write insurance upon risks prohibited by their letters of instructions and for the insurance companies to consider said insurance covered until they had an opportunity to and did notify the agent to cancel the same.

"(13) On August 16, 1915, it was the custom in the city of Houston to write insurance in companies before the insurance supplies for said companies were received by the agent.

"(14) On the forenoon of August 16, 1915, K. E. Womack, of the Shippers' Compress Company, having called Craig C. Belk, of Rice & Belk, on the telephone, and having notified him that he wished $20,000 tornado insurance for one year on the sheds of the Shippers' Compress Company, Mr. Belk replied that the property would be covered from 12 o'clock noon that day for $20,000 and that as soon as possible he would mail policy.

"Neither K. E. Womack, as an individual or as representative for the Shippers' Compress Company, plaintiff, nor the Shippers' Compress Company, ever prior to the storm had any knowledge of the existence of the defendant, Northern Assurance Company, and did not have in contemplation, on August 16th, making any contract with said company for tornado insurance, he not knowing in what company his insurance would be placed, nor had he, or either of them, ever prior to the storm had any dealings with the Northern Assurance Company about insurance, or with Rice & Belk as its agents, but on and prior to that date did have fire policies in the Commercial Union Assurance Company on this property, same being written by Rice & Belk as agents.

"(15) In accordance with the usual custom Rice & Belk were to charge the premiums to the Shippers' Compress Company and to render bill therefor upon the 1st of the month, at which time such premiums would be paid, and that this was the manner in which the insurance of the plaintiff with Rice & Belk had been paid for, and that the amount to be paid by the plaintiff was the amount which Rice & Belk would charge for the said insurance, and that the rate charged by all companies engaged in the tornado business in the state on that date was approximately the same, to wit: 40 cents per $100. That plaintiff has demanded its policy and offered to pay the premium charged by Rice & Belk.

"(16) After the conversation with Womack over the phone, Rice & Belk determined to place same in the Northern Assurance Company, and attempted to do so by sending to such company the following telegram:

          " 'Houston, Texas, 8—16—15.
" 'Northern Assurance Co., Ltd., New York, N. Y.: Send tornado supplies per letter fourth inst. Binding to-day twenty thousand tornado. Shippers' press schedule fifteen hundred Belk furniture.                 . Rice & Belk.'
—which telegram was not received by the defendant until the next morning, August 17th, when the following telegram was sent to Rice & Belk by defendant:

          " 'P. S. New York, Aug. 17, 1915.
" 'Rice & Belk, Houston, Texas: Please immediately cancel tornado binders Shippers' press; undesirable.
               " 'The Northern Ass'n Co.'

"I find that on August 16, 1915, Rice & Belk sent the following letter to the defendant:

"'Aug. 16th, 1915.

"'Northern Assurance Co., Ltd., New York, N. Y.—Gentlemen: Confirming our telegram this date as follows:

"'"Send tornado supplies per letter fourth inst. Binding to-day $20,000.00 tornado Shippers' press schedule $1,500 Belk furniture."

"'We will ask that you kindly send us tornado supplies in the line with your letter.

"'We are binding in the Northern, awaiting the supplies, $20,000 on the schedule of the Shippers' Compress, situated on the east side of Hill street, on the Old Cleveland Compress site, volume 2, p. 12, on the Houston map.

"'We are also binding $1,200 on furniture contained in the two-story frame shingle roof dwelling, located at 2802 Milam street, policies to be issued as soon as supplies are received.

"'Yours truly.'

"And on August 17, 1915, the Northern Assurance Company sent the following letter to Rice & Belk:

"'The Northern Assurance Company, Ltd., of London.

"'New York, August 17th, 1915.

"'Messrs. Rice & Belk, Agents, Houston, Texas—Gentlemen: We beg to confirm our telegram of even date reading:

"'"Please immediately cancel tornado binders, Shippers' press; undesirable."

"''Although we appreciate your interests in our behalf, we must ask that you kindly refrain from accepting any tornado liability until we have placed in your hands our prohibited list with letter of instructions. At present we are not in receipt of the policies, and therefore are unable to forward you the tornado supplies.

"'Thanking you for your kind attention, we are    Yours very truly,

"'[Signed]    J. O. Lane, Agency Superintendent.'

"I find that the said Craig C. Belk took the usual and customary steps necessary 'to bind' the said insurance in the Northern Assurance Company, which could have been taken before the policy itself was issued, in so far as he had the legal authority to do so.

"(17) That about 6 or 6:30 in the evening of August 16, 1915, Capt. Smith, state agent of the Northern Assurance Company, telephoned Craig C. Belk and asked him to cancel the binder or to transfer it to some other company represented by him, stating that he did not think that Belk had the authority to write the insurance, which Belk stated he would do.

"(18) Upon receipt of this telephone message from Capt. Smith, said Belk sent to the Commercial Union Assurance Company, Limited, the following telegram:

"'Binding to-day twenty thousand tornado Shippers' Compress fifteen hundred Belk furniture.'

"And the next day he received the following answer to said telegram:

"'Reduce tornado Shippers' Compress ten thousand. Hope you escape Galveston blow.'

"(19) That Rice & Belk did not notify the New York office of the Northern Assurance Company that they had canceled said insurance.

"(19a) The court finds that Rice & Belk and Craig Belk had no authority after the loss, by waiver or otherwise, to create any liability against the Northern Assurance Company for the tornado loss.

"(19b) I find, further, that after the tornado loss, the Commercial Union Assurance Company, Limited, made an agreement with the Shippers' Compress Company, plaintiff, that Shippers' Compress Company should sue the Northern Assurance Company and recover for the loss, and the Commercial Union Assurance Company, Limited, would recognize liability to the Shippers' Compress Company for the amount of the claim if the Shippers' Compress Company were unable to collect from the Northern Assurance Company.

"(20) On the morning of August 17, 1915, about 3 o'clock a. m. a tornado hit the city of Houston, and severely injured shed C and D and the press room of the Shippers' Compress, and that the tornado loss thereon, including slight damages to A and B—that is, the cost to place the same in the same condition as before the storm—was $4,300, which sum I find to be the reasonable value of the work done and the amount of damage sustained by the plaintiff. That on August 18th said Belk went with said Womack to the compress and inspected said property, and directed the said Womack to have said damages repaired and to send him the bill. That he stated at said time that he did not know which company was responsible, but that the plaintiff had binders in both companies.

"I find the value of said sheds to have been approximately $30,000.

"(21) The defendant has at all times denied liability under said policy and has refused to deliver the policy.

"(22) I have been requested by both counsel for plaintiff and defendant to find whether or not Rice & Belk, or Craig C. Belk, or N. M. Smith, state agent, had the authority as the agents of the Northern Assurance Company to issue a binder, binding it upon a tornado policy, and as I do not deem it necessary to a decision in this case I expressly decline to find on that fact.

"Conclusions of Law.

"In deciding this case I took the view that Rice & Belk were the general agents of certain insurance companies to secure for them policies of insurance, but that at the same time they were the special agents of their customers for certain purposes, and that, when a client or customer phoned to them to procure valid insurance, of any kind, that they became to a limited extent the agent of the person telephoning until valid insurance was procured.

"It seems to me that, when it became questionable in his mind as to whether or not the insurance that Belk had tried to secure for his customer was valid or not, that under such authority he would then have, as well as under the custom I have set out, the authority to change and place the risk in a company about which there could be no question.

"Under the custom set out in the conclusions of fact in regard to substitution or the change of the binder from one company to another, Craig C. Belk had the right and authority to change the binder from the Northern Assurance Company to the Commercial Assurance Compa-

ny, and did so change the same, and that at the time of the loss the plaintiff had no insurance in the Northern Assurance Company, and I find for the defendant.

"I have been requested by both counsel for plaintiff and defendant to find whether or not Rice & Belk or Craig C. Belk had the authority as the agents of the Northern Assurance Company to issue a binder, binding it upon a tornado policy, and as I do not deem it necessary to a decision in this case I expressly decline to find on that fact."

Upon these findings of fact and conclusions of law, judgment was rendered in favor of defendant.

From the findings of fact above set out, it appears that in the forenoon of August 16, 1915, W. E. Womack, secretary and treasurer of the Shippers' Compress Company, telephoned Craig C. Belk and asked him to place $20,-000 tornado insurance on the sheds of the Shippers' Compress Company for one year. Mr. Belk agreed to give this insurance. Nothing was said between Womack and Belk as to what company it should be placed in, and Belk did not have any further conversation with Womack, or any one representing plaintiff, until after the loss. Womack did not know that there was a company named Northern Assurance Company. He did not know that Rice & Belk were agents of the Northern Assurance Company, or that they were or were not authorized to write tornado insurance for that company. He left these questions entirely to the agent, and in telephoning Rice & Belk, he expected them and desired them to place valid insurance. His testimony was:

"I expected them to grant me insurance about which there would be no question;" and further, "So far as I know I never had a policy of insurance from the Northern Assurance Company. I did not ask Rice & Belk to place my tornado insurance with the Northern Assurance Company."

[1] Complaint is made in the first and second assignments of error as follows: (1) That the court's finding is not supported by the evidence; and (2) that the court erred in its conclusion of law to the effect that under the custom set out in the conclusions of fact in regard to the substitution of binders Belk had the right and authority to change the binder from the Northern Assurance Company to the Commercial Union Assurance Company, and that the Northern Assurance Company was not liable.

In our judgment, these deal with entirely different legal propositions. However, we will say that, aside from this fact, we will consider them in the manner in which they are briefed, and without going further into the question about the assignments being improperly grouped, and waiving the fact that they ought not to be considered.

Dealing with the first assignment of error, complaint is made that this finding of fact is not supported by the evidence. There are many propositions urged, the first being that the binder in the Northern Assurance Company implied all the usual and customary provisions of a policy of tornado insurance as written in the state of Texas; that a custom cannot be invoked to vary the plain and unambiguous terms of a contract; that the alleged custom was not binding upon the plaintiff, for the reason that as a local and peculiar custom it was not shown to have been known to the plaintiff; that the finding and conclusion as to the alleged custom were improper and erroneous, because there are no appropriate averments in the pleadings to support them; that the finding of the trial court is not supported by the evidence; that there were no pleadings upon which to base the finding that there was a general custom existing throughout the state of Texas.

On the contrary, it is urged that, if there was any executory oral contract for insurance, this contract was for a policy containing the usual provisions in policies of the Northern Assurance Company covering a like hazard in use in this territory, and since the Northern Assurance Company had no policy in use, no such agreement could be enforced against it, and that where an agent representing several insurance companies is requested by a property owner to place a certain amount of insurance, the question of the selection of the company being left to the agent and thereafter the agent in his own office makes a memorandum of a company in which he will place the insurance and before the property owner is advised of the name of such company, the agent substitutes another company for the insurance, and there is a universal custom existing in the place where the transaction occurred to the effect that under such circumstances the agent is authorized to make the substitution, knowledge of such custom is chargeable to the property owner, and such agent under such custom is authorized to bind the property owner by making such substitution; that the pleadings of plaintiff and of defendant properly raise the issue of the general custom in the insurance business to substitute one company for another where binder was made and the assured was not advised of the name of the company first selected; and that the findings of the trial court to the effect that on August 16, 1915, and prior thereto, it was the universal custom in Texas that when an insurance agent had not issued a policy of insurance, and had not advised the assured the name of the company in which his insurance had been placed, although he had placed a binder for the same, that the agent was authorized to and did substitute for said insurance in that company insurance in another company that he desired to place the same in, was amply supported by the evidence.

It may be well to say at the outset that we are of the opinion that the evidence justifies the judgment rendered in this case, and without undertaking to set out the evidence, which is very voluminous, it will be sufficient to say that we have gone over the record carefully, and have reached the conclusion that there was no error in this respect. The finding of the court and the conclusion, to the effect that under the custom Belk had a right to change the binder from the Northern to the Commercial Union, the conversation between the plaintiff and Belk, the agent, the conversation between Smith, the state agent of defendant, and the local fire insurance agents, the telegram between Belk and the Northern Assurance Company, and the telegram between Belk and the Commercial Union Insurance Company showing that at the time of the conversation the Northern Assurance Company was not authorized by the department of insurance and banking to transact a tornado insurance business in the state of Texas, and that neither Newt M. Smith, nor Rice & Belk, or any one else, held any certificate of authority from either defendant or from the commissioner of insurance and banking authorizing the writing of tornado insurance in the state of Texas, and further showing that at the time of the conversation, the Northern Assurance Company did not have any supplies or policies, or daily reports, for the writing of tornado business, and that the defendant had not authorized Rice & Belk to bind it on tornado business, and had not furnished them with any supplies for the tornado business. It will be sufficient to refer to the following authorities: Ikeller v. Insurance Co., 24 Misc. Rep. 136, 53 N. Y. Supp. 323; Karelsen v. Sun Fire Office, 122 N. Y. 545, 25 N. E. 921; Ostrander on Insurance, pp. 52–54; Richards on Insurance (3d Ed.) p. 389; Lipman v. Niagara Insurance Co., 121 N. Y. 454, 24 N. E. 699, 8 L. R. A. 719.

There seems to have been a general custom existing in Houston, Tex., in the insurance business, to the effect that so long as the risk rests on a binder slip to transfer it from one to another company without communicating with the assured, provided the name of the first insurance company is not given to the assured, and it seems that this custom exists in every office in the insurance business. From the conclusions of the trial court, which seem to be borne out by the decisions, and as borne out by the evidence in the case, it seems that Mr. Womack, the representative of the Shippers' Compress Company, the plaintiff, telephoned to Mr. Belk, of the firm of Rice & Belk, insurance agents, and requested them to place $20,000 worth of tornado insurance upon the sheds of the Shippers' Compress Company for the period of one year, but that no company was named. Mr. Belk replied, "All right." At that time

208 S.W.—60

Rice & Belk were the local agents in Houston, Tex., for the Northern Assurance Company for the purpose of writing fire insurance only, and were not the agents of that company for the purpose of writing tornado insurance, and at that time said company had not been authorized to write insurance in the state of Texas by the department of insurance and banking, and Rice & Belk had received no certificate of authority, either from the company, or from the commissioner of banking and insurance, as required by law. It further appears that on August 4, 1915, Rice & Belk had received a circular, addressed to the agents of the Northern Assurance Company in Texas, in substance stating that that company was contemplating the writing of tornado business in the state of Texas, but indicating that the company would not write insurance on open structures, and that when they began the writing of business they intended to keep away some distance from the sea borders. This circular inquired whether the agent would be in a position to give good tornado business, and would like to have the company send tornado supplies. On August 16, 1915, shortly after the conference between Mr. Womack and Mr. Belk, Mr. Belk made a memorandum in his office, which might be referred to as a binder, indicating that he selected the Northern Assurance Company for the purpose of carrying the tornado insurance requested by Mr. Womack. However, it happened that Mr. Newt M. Smith, the state agent for the Northern Assurance Company, called at the office of Mr. Belk, and when Mr. Belk advised him that he had just given the Northern Assurance Company $20,000 of tornado insurance as a compliment to him, Mr. Smith replied in substance, that that would not do, as neither Belk nor Smith were authorized to write tornado insurance in the Northern Assurance Company; that that company had not begun the writing of such insurance business. At that time Mr. Belk also represented the Commercial Union Assurance Company and the Delaware Underwriters', and was authorized, on behalf of those companies, to write fire and tornado insurance. After the conversation between Mr. Smith and Mr. Belk, Mr. Belk told Mr. Smith that he would relieve the Northern and place the risk with the Commercial Union Assurance Company. On the 16th day of August, 1915, the same day of the conversation between Mr. Womack and Mr. Belk, Mr. Belk issued a binder in the Commercial Union Assurance Company for $20,000, and on that afternoon wired to the Commercial Union to the effect that he had placed the insurance with it. Earlier in the afternoon, when Mr. Belk made a memorandum of binder in reference to the Northern, he sent a wire to the home office of the Northern Assurance Company, advising that he had

bound the Northern and requesting supplies. This telegram was received by the Northern after the loss and damage to the property, and the Northern, without knowledge or notice of the loss, wired on the 17th day of August, 1917, as follows:

"Please immediately cancel tornado binder Shippers' Compress; undesirable."

And on the same date a letter was written from the Northern Assurance Company to Messrs. Rice & Belk, confirming this telegram, and further requesting that the agents—

"kindly refrain from accepting any tornado liability until we have placed in your hands our prohibitive list with letter of instructions. At present we are not in receipt of the policies, and therefore are unable to forward you the tornado supplies."

[2, 3] It appears, therefore, to our minds, clear that, under a proper construction of the employment of Belk by the plaintiff to place insurance, he was authorized, as such agent, to exercise his discretion in placing the insurance in some company authorized to write the same, and that, as the plaintiff had not been advised of any company selected, he was authorized to substitute a binder in the Commercial Union Assurance Company in lieu of his attempted binder in the Northern Assurance Company, so that there would be no question as to the validity of the insurance. To our minds he had this authority, and further we may say that it was his duty, as the representative of plaintiff for the purpose of placing insurance, to use his discretion in securing a company that would carry the risk, and furnish to his employer, the plaintiff, insurance about which there would be no question.

The rule is laid down in the case of East Texas Fire Insurance Co. v. Blum, 76 Tex. 663, 13 S. W. 572, to the effect that the authority of a broker employed to procure insurance for his principal, such broker not being a general agent to place and manage insurance on his principal's property, terminates with the procurement of the insurance. It is stated by the Supreme Court in that case that it cannot in reason be held to continue after the insurance has been procured and the policy has been delivered to the principal. Agents to procure a contract have no power to discharge it implied from the original power merely. If he possesses that power, it arises from some actual or apparent authority superadded to the mere power to enter into the contract, and the Supreme Court, in the Blum Case, recognizes the rule that, where a broker or an agent has a general power to represent the plaintiff in matters relating to insurance or has the apparent authority to accept notice or cancellation or substitution of the policy, such agent or broker is authorized to accept cancellation or to make a substitution. That court specifically holds that such an agent or broker is the agent of the property owner for the purpose of securing insurance. An agent for another for the purpose of procuring insurance certainly has some discretion that he may properly exercise in the selecting of a company for the purpose of carrying insurance.

In the present case Mr. Belk was employed by the plaintiff to procure valid insurance in some company. After this employment he made a notation in his office indicating that he would give the policy to the Northern Assurance Company. Shortly thereafter, and before the assured was advised of any action on his part in the selection of a company, he received information to the effect that the Northern Assurance Company was not writing tornado insurance. He had never before issued a policy in that company. He had no forms or supplies from it, and the state agent of that company, who was his superior, advised him that the company was not writing tornado insurance—that no one was authorized to bind it upon such class of business. The action of Mr. Belk in placing another binder in the Commercial Union Assurance Company, a company that had authorized the writing of tornado business in Texas, and who had furnished Mr. Belk with its supplies and policy forms, was an act for the benefit of the plaintiff, and in furtherance of the employment. If Belk had not made the substitution, and it should be held that the Northern Assurance Company had not authorized Mr. Belk to issue a policy of insurance insuring against tornado loss, we think, under the authority of Diamond v. Duncan, 107 Tex. 256, 172 S. W. 1100, and 177 S. W. 955, Mr. Belk would have been legally liable to the plaintiff, for the reason that he had not complied with his employment to place insurance for the plaintiff.

[4] We are of opinion that under the law the action of Mr. Belk in substituting the Commercial Union for the Northern was within his authority, regardless of any course or custom of dealing in the insurance business; but the fact that at the time of these transactions there existed in the city of Houston, and in Texas, a general custom to the effect that when a binder was made in one company, and no notice of the name of the company was given to the assured, and the agent placing the binder learned that the company would not carry the risk, or for any other reason deemed it wise, could substitute one company for another without communicating with the assured, reinforces that view. As this custom was general, plaintiff was chargeable with knowledge of it, when he made his contract of employment with Mr. Belk, such employment was made in the light of such custom, and in construing the meaning of such employment, and the au-

thority of the agent thereunder, this custom should be considered.

Upon a careful consideration of the matters complained of, we are of the opinion that the said assignments should be overruled.

In the third assignment it is claimed that the court erred in the following finding of fact:

"In deciding this case I took the view that Rice & Belk were the general agents of certain insurance companies to secure for them policies of insurance, but that at the same time they were the special agents of their customers for certain purposes, and that when a client or customer phoned to them to procure valid insurance of any kind that they became, to a limited extent, the agent of the person telephoning until valid insurance was procured."

This seems to be grouped with the fourth assignment, which complains of the following finding of fact:

"It seems to me that when it became questionable in his mind as to whether or not the insurance that Belk had tried to secure for his customer was valid or not, that under such authority he would then have, as well as under the custom I have set out, the authority to change and place the risk in a company about which there could be no question."

. The proposition is made under these assignments that, after acceptance on behalf of the Northern of the appellant's request for insurance, the authority of Rice & Belk to represent the appellant was exhausted, and their subsequent attempt to cancel the binder of the Northern and to substitute the obligaion of the Commercial Union without notice to the appellant was void and of no effect.

On the contrary, it is urged that as the undisputed evidence shows that Rice & Belk had no authority as agents to bind the Northern Assurance Company upon a tornado policy of insurance, and as there was no holding out of Rice & Belk by the defendant as agents with such assured, it is not reversible error for the trial court to refuse to file conclusions of law upon the question of such authority of Rice & Belk.

[5, 6] The plaintiff had never dealt with the Northern Assurance Company, through its agents, Rice & Belk. It had no knowledge of Rice & Belk's representing it in any capacity. Nothing was ever done by Rice & Belk to lead plaintiff to believe that they represented the Northern Assurance Company in the writing of tornado insurance. Plaintiff had no information from any source that would lead it to believe that the Northern Assurance Company were doing a tornado business, and in this record there is no testimony indicating that the plaintiff relied upon any authority in Rice & Belk as agents of the Northern Assurance Company in the writing of tornado insurance. The theory of apparent scope of authority is based upon the rule of estoppel, to the effect that, where a principal has led another to believe that an agent has authority to act, such principal cannot later say that such agent was without such authority, and this rule is based upon equity. Where the actual authority does not exist, the burden is upon the plaintiff to bring himself within the rule of apparent authority. In this case the plaintiff has failed to do that, for there is no evidence of a holding out by the defendant, and no evidence that the plaintiff relied upon any apparent authority in Rice & Belk as the agents of the Northern Assurance Company in the writing of tornado insurance.

[7] This case was tried before the court without a jury, and in view of the fact that the evidence upon the question of authority was undisputed, the failure of the court to file his conclusion of law upon the question of the authority of Rice & Belk is immaterial, and cannot constitute reversible error. The trial court found the facts in reference to the authority of Rice & Belk. The failure of the court to file conclusions of law upon the question of the authority of Rice & Belk is immaterial, by reason of the fact that under the evidence, even if Rice & Belk had authority to act for and bind the Northern Assurance Company in the writing of tornado insurance, the action of Rice & Belk in substituting the Commercial Union Insurance Company binder for that of the Northern was within the authority of such agents as the representatives of the plaintiff, and by reason of such action the defendant, Northern Assurance Company, was relieved of any liability.

We are unable to find any merit in the contentions of appellee, and the assignments are therefore overruled.

The remaining assignments, after a careful review of the record, are overruled. The appellant has, in our opinion, had a fair trial in the court below, and the findings of fact and conclusions of law filed by the trial court are in accordance with the facts and the law, and this record shows no reversible error, and in our opinion justice has been done.

The judgment of the lower court is therefore in all things affirmed.

HIGHTOWER, C. J. I agree to the disposition made of this case by Justice BROOKE.

### On Motion for Rehearing.

HIGHTOWER, C. J. Appellant has filed a lengthy motion for rehearing in this cause, challenging the correctness of this court's opinion affirming the judgment, but after consideration of same we are of the opinion that the disposition as made by us in the former opinion was correct, and that no reason is shown in appellant's motion why we should not adhere to the ruling there made;

and the motion for rehearing is therefore overruled.

At the request of appellant, we make additional findings of fact, as follows:

(1) That the standard form of tornado insurance policies at the time this transaction took place, throughout the state of Texas, contained the provision that such policies could only be canceled after five days' written notice.

(2) That Rice & Belk did not handle all of the insurance of the Shippers' Compress Company, but that said company had insurance with other agents. That the policy in question was the only policy of insurance against tornadoes ever taken out by the appellant; also that Rice & Belk had never canceled, in so far as is shown by the record, but one policy of insurance for the appellee, and had only done so in that instance after consulting with appellant's agent, Womack, and obtaining his consent thereto.

(3) It was the custom on August 16, 1915, of all insurance agents in the city of Houston to write insurance upon risks prohibited by their letters of instructions, and for the insurance companies to consider said insurance covered until they had had an opportunity to and did notify the agent to cancel the same.

(4) On August 16, 1915, it was the custom in the city of Houston to write insurance in companies before the insurance supplies for said companies were received by the agent.

We further adopt as our own all findings of fact made by the trial court, and conclude that such findings are fully sustained by the evidence contained in the record.