## WILLIAMS-BERRYMAN INS. CO., INC., A Corporation *v.* Carl MORPHIS et al

5-5419                                         461 S. W. 2d 577

### Opinion delivered January 11, 1971

*Williams & Gardner,* for appellant.

*Laws & Schulze,* for appellees.

J. Fred Jones, Justice. Williams-Berryman Insurance Company, Inc., an insurance agency in Russellville, Arkansas, procured a fire insurance policy in the amount of $3,000 insuring real property in Russellville against loss by fire. Carl Morphis and First Federal Savings & Loan Association of Russellville were the insureds when a fire loss occurred and the insurer was unable to pay because of insolvency. Morphis and First Federal sued Williams-Berryman for $3,000 in the Pope County Circuit Court and a jury trial resulted in a judgment in favor of Morphis and First Federal. On appeal to this

court Williams-Berryman rely on the following point for reversal:

"The lower court erred in refusing to direct the verdict for appellant."

The appellant, Williams-Berryman Ins. Co. is an insurance agency, or insurance brokerage firm, in Russellville and as such, procures various forms of insurance from various insurance companies for individual customers and purchasers of insurance in the Russellville area. Morphis purchased the insured property and assumed a real estate loan from First Federal. He also took over by assignment the fire insurance contract covering the mortgaged property. The insurance contract was for a five year period r·nning from October 12, 1961, in the amount of $3,000, and the policy was issued by Peoples Indemnity Insurance Company. Peoples became insolvent on July 28, 1965, and its business was assumed by Homestead Fire & Casualty Insurance Company of Pine Bluff. On February 15, 1966, while the policy was in force, the insured premises were destroyed by fire. Claim was made for the loss under the insurance contract, but after the date of the loss and before the claim was paid, Homestead also went into receivership and the claim was never paid.

The complaint against the agency alleged that it was in the business of purchasing insurance for its customers and that it selected the insurance companies who issued the policy and assumed the risk in this case; that the agency owed a duty to its customers to secure insurance policies in solvent companies, and that the appellees had been damaged in the amount of $3,000 by the appellant's failure to carry out its duty of obtaining insurance in solvent companies.

The question before the trial court on motion for a directed verdict, and the question before this court on appeal, is whether there was sufficient evidence of negligence on the part of the appellant to present a question of fact for the determination of a jury. This question must be answered in the light of appellant's knowledge

at the time the policy was issued and reinsured, and not at the time of the loss and failure to pay the claim.

The appellee points out that Morphis actually obtained the policy by assignment when he purchased the property; that the appellant and First Federal occupy the same offices; that the secretary of First Federal owns a half interest in the appellant agency; that the secretary, Mr. Harmon, solicited Mr. Morphis' insurance business and was authorized to purchase the insurance in the amount of $3,000 with loss payable clause to First Federal. It would appear that such connection and procedure would be as consistent with the appellant's lack of knowledge of the impending insolvency of the companies insuring First Federal's interest, as it would of negligence in procuring the insurance for the protection of Morphis; but, be that as it may, the question boils down to how far an insurance agent must go in ascertaining the solvency of an insurance company from whom he purchases insurance for customers or clients.

We deem it unnecessary to set out the evidence in detail. The record is clear that both insurance companies were duly authorized to do business in Arkansas and were solvent in so far as the insurance commissioner, or anyone else knew, when the policy was issued by Peoples Indemnity and reinsured by Homestead.

The appellees argue that the appellant could have consulted Best Insurance Guide for a determination of the financial stability of the insurance companies, but the evidence is clear that Peoples Indemnity was favorably listed in Best when the policy was issued, and that Homestead had not been in operation for sufficient time to obtain a listing in Best at the time of its reinsurance. Furthermore, as we view it, the appellant's failure to consult Best before placing the insurance in the amount of $3,000 in this case, would be like failing to consult Martindale before employing a licensed attorney to handle a case in municipal or small claims court. The evidence is uncontroverted that very few, if any, of the larger insurance companies will write fire insurance policies in such small amounts of $3,000.

The appellees rely on *Derby* v. *Blankenship*, 217 Ark. 272, 230 S W. 2d 481, but the facts in that case were quite different from those in the case at bar. In *Derby*, the agent agreed with the owner of a sawmill to obtain assigned risk workman's compensation insurance coverage for the sawmill operation and the owner paid an amount on the premium and began operations. An employee was killed in the course of his employment and the owner found that the agent had not obtained the insurance coverage. Neither had he advised the owner of his inability to do so. The owner sued the agent for damages in breach of contract. Had the agent in *Derby* procured the coverage as agreed and the compensation carrier had subsequently become insolvent, and the agent had been sued for tortious negligence in selecting a potentially insolvent compensation carrier, the *Derby* case would be more in point with the case at bar.

The appellees argue that "the law was well settled by the trial court in plaintiffs' instruction number three," in which the trial court, after instructing the jury on ordinary care in the selection of companies with which insurance is placed by the agent, ended the instruction with the phrase, "and (the agent) is expected to know the relative financial strength of the company."

While the appellant does not assign error in the instructions, and we do not reach the instructions on this appeal, we do not agree that the trial court settled the law in the above quoted portion of plaintiffs' instruction No. 3, or that the quoted portion of the instruction is the settled law. We conclude that the appellant has properly analyzed the facts as reflected by the evidence when it states in its brief as follows:

"Here, . . . the insurance policy was procured in a company authorized to engage in the business of writing insurance in the State of Arkansas which some four years later went into conservatorship, its policies transferred to or reinsured by another company in Arkansas authorized to do business by the Insurance Department of the State and considered

by said Department at the time of the reinsurance to be a sound and solvent company but which, after some eight months of operation, also went into receivership and was unable to pay the loss suffered by Appellees."

We are also impressed by the appellant's quote from 43 Am. Jur., § 178, p. 235, as follows:

"The general rule is that an insurance agent or broker is not a guarantor of the financial condition or solvency of the company from which he obtains the insurance. However, he is required to use reasonable care, skill, and judgment with a view to the security or indemnity for which the insurance is sought, and a failure in such respect may render him liable to the insured for resulting losses due to the insolvency of the insurer. Consequently, where a policy is procured in a company which is known by the agent to be insolvent, the agent is liable for a loss suffered thereby, while on the other hand, where the company was solvent when the policy was procured, the subsequent insolvency of the company does not impose liability on the agent or broker."

We hold that the general rule as above set out is the rule to be applied to the facts in this case. We further hold that the appellees failed to sustain their burden of proving that the appellant failed to use reasonable care, skill, and judgment with a view to the security or indemnity for which the insurance was sought. We find no evidence in the record that the appellant knew, or by the exercise of reasonable care could have known, that the companies were insolvent at the time the policy was issued, or at the time the risk was reinsured.

According to all the evidence in the record, Peoples Indemnity was definitely solvent when the policy was issued, and there is no evidence at all that Homestead was insolvent at the time it took over the assets and

liabilities of Peoples. The evidence is to the contrary. We conclude that the trial court should have directed a verdict for the appellant at the close of the evidence in this case.

The judgment of the trial court is reversed and this cause dismissed.