MASTER PLUMBERS LIMITED MUTUAL LIABILITY COMPANY, Appellant, v. CORMANY & BIRD, INC., and another, Respondents.

*No. 75–341. Submitted on briefs June 2, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 533.)

For the appellant the cause was submitted on the briefs of *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee.

For respondent Cormany & Bird, Inc., the cause was submitted on the brief of *James P. Brennan* and *Simarski, Goodrich, Brennan & Stack,* all of Milwaukee.

For respondent Agency Managers Limited, the cause was submitted on the brief of *James G. Doyle, James A. Baxter* and *Schellinger & Doyle, S. C.* all of Milwaukee.

DAY, J.   This is an appeal from a judgment in favor of the defendants-respondents entered at the close of plaintiff-appellant's case-in-chief on August 26, 1975. Plaintiff Master Plumbers Limited Mutual Insurance Company (Master Plumbers) is a Wisconsin corporation with offices in Milwaukee and licensed by the State of Wisconsin to write worker's compensation, liability and automobile insurance for plumbing and heating contractors and allied trades. Defendant Cormany & Bird, Inc., Milwaukee, is a Wisconsin corporation which obtains reinsurance for various clients including the plaintiff.[1]

---

[1] "A reinsurance treaty is described in 13 Appleman, *Insurance Law and Practice:*

" 'Reinsurance is a contract whereby one insurer for a consideration contracts with another to indemnify it against loss or liability

Defendant Agency Managers Limited (Agency Managers), New York City, is a New York Corporation in the business of underwriting which also participated in contracts for reinsurance for the plaintiff.

This action alleges the defendants were negligent in obtaining reinsurance with a New York Company which ultimately became insolvent. As a result, plaintiff was liable for claims under policies which it had written and then reinsured with the insolvent company. The action commenced August 8, 1972. Trial was to a jury.

In 1953 Master Plumbers asked Cormany & Bird to obtain reinsurance for it. With reinsurance, Master Plumbers could write insurance policies with coverage in excess of its minimum capital and surplus retention required by law. Master Plumbers and the reinsurers would share both the premiums and the liabilities arising from claims in proportions fixed by the reinsurance contract or "treaty."

Cormany & Bird secured reinsurance through a New York reinsurance broker.[2] The reinsurers were represented by Agency Managers which in effect acted as a reinsurance department for the various reinsurers who severally shared the risk. Agency Managers collected premiums and negotiated and settled claims on behalf of the reinsurers.

---

by reason of a risk which the latter has assumed under a separate and distinct contract as the insurer of a third person.' P. 460, sec. 7693.

"'Reinsurance, to an insurance lawyer, means one thing only— the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss.' PP. 433, 434, sec. 7681." *Franklin Mut. Ins. Co. v. Meeme Town Mut.*, 68 Wis.2d 179, 181, 228 N.W.2d 165 (1975).

[2] Stewart, Smith & Co., Inc.

The reinsurance treaty was entitled "Contract No. 182." From 1960 to 1963, Agency Managers and Master Plumbers executed addenda to Contract No. 182, each effective on the anniversary date of the main contract. Their purpose was to name the participating reinsurers and to allocate their respective risks. From 1958 to 1963 Citizens Casualty Company of New York was one of several participating reinsurers.

In 1963 Citizens Casualty was made the sole reinsurer —assuming 100 per cent of the reinsurance risk. The record is silent as to any subsequent change in Contract No. 182 regarding allocation of risk until January 1, 1968, when Citizens Casualty no longer was on the risk. In the interim, Master Plumbers sustained liabilities on two insurance claims which were settled for sums in excess of its primary retention. Also in the interim, Citizens Casualty was declared insolvent by a court of the state of New York and finally liquidated.

The Supreme Court Appellate Division of New York found Citizens Casualty insolvent as of December 31, 1967. On June 17, 1971, after unsuccessful attempts to rehabilitate the company, the Supreme Court, Special Term, granted the petition of the New York Superintendent of Insurance for an order forcing liquidation of the company.

At trial, John D. Bird, one of the officers of Cormany & Bird, testified that during the period of 1963 to 1967 he did not inform Master Plumbers of any change in the financial condition of Citizens Casualty and said he did not know of any.

Mr. Bird testified he referred to *Best's Insurance Guide* in 1963 when Citizens Casualty assumed the entire reinsurance risk. On June 23, 1971, after Master Plumbers had been informed by Agency Managers of Citizens Casualty's problems, Mr. Bird wrote Master Plumbers a letter which in part said,

"In 1963, when the collateral was changed to Citizens, I checked Best's and found that their surplus met the requirements of the State of Wisconsin, and also that their combined loss ratio was a respectable 94.7% . . . Subsequent to 1963, I did not check their financial position which, of course, is where I erred."

There was no evidence introduced at trial that Citizens Casualty was other than qualified or financially sound in 1963.

The trial court dismissed the action at the close of plaintiff's case-in-chief because the proof to that point showed that at the time the reinsurance was obtained Citizens Casualty was both authorized to do business and solvent.

In a jury trial, a motion for nonsuit when plaintiff has completed his evidence is equivalent to a demurrer to the evidence. It is incumbent on the court to view the evidence in a light most favorable to the plaintiff; the court must give plaintiff the benefit of the most favorable inferences that can reasonably be deducted therefrom. *Styczinski v. Styczinski,* 36 Wis.2d 36, 40, 152 N.W.2d 865 (1967); *Trogun v. Fruchtman,* 58 Wis.2d 569, 584, 207 N.W.2d 297 (1973). *Cf., Household Utilities, Inc. v. Andrews Co.,* 71 Wis.2d 17, 24–25, 236 N.W. 2d 663 (1975).

The general rule is that where an agent provides a policy in a company which is solvent or generally considered so, he is not personally liable for a loss which occurs when the company subsequently becomes insolvent. *Beckman v. Edwards,* 59 Wash. 411, 110 P. 6 (1910), citing *Gettins v. Scudder,* 71 Ill. 86 (1873); *accord, Eastham v. Stumbo,* 279 S.W. 1109, 1110, (Ky. 1926).

"An insurance broker is bound to exercise reasonable skill and diligence in the transaction of the business entrusted to him and he will be responsible to his principal for any loss resulting from his failure to do so . . . However, absent proof that the agent in some manner breached his duty, he is not liable when the company in which the policy is procured later becomes insolvent. . . ." *Kane Ford Sales, Inc. v. Cruz,* 119 Ill. App.2d 102, 25 N.E.2d 90, 91 (1970).

The alleged negligence of the defendant must be considered in light of his knowledge at the time the policy was issued, and not at the time of the loss and failure to pay the claim. *Williams-Berryman Ins. Co. v. Morphis,* 249 Ark. 786, 461 S.W.2d 577, 578 (1971). *Also see,* 3 *Couch on Insurance,* 2d sec. 25.48, pp. 354–355; 16 Appleman *Insurance Law and Practice,* sec. 8833, p. 468 (revised volume) ; 43 Am. Jur.2d *Insurance* sec. 178.[3]

In the case at bar there is no evidence by which it can be inferred the defendants knew or should have known of financial problems on the part of Citizens at the time it placed the insurance, nor that it had or should have had such knowledge until the New York court proceeding when Citizens was declared insolvent. By this time, the

[3] In a case cited by Master Plumbers, a federal district court applying Texas law held that an insurance agent has a duty to inform his clients when the agent knew or should have known that the insurer had become insolvent, or to replace the insurance. *Cateora v. British Atlantic Assurance Ltd., of Nassau,* 282 F. Supp. 167 (S.D. Texas 1968). While that case seems to extend the general rule by finding an on-going duty on the part of the agent to monitor the well-being of the insurer with which he has placed the insurance, the court explicitly found that the agent had undertaken to keep the plaintiff insured and that his knowledge of the insolvency was actual or imputed before the insured's loss occurred.

claims against Master Plumbers had already been incurred. Under the rules previously mentioned, therefore, defendants breached no duty to Master Plumbers.

Master Plumbers' reply brief states that the contract was renewed each year until January 1, 1968. However the record does not support the claim that the contract was renewed each year. Article IX of the treaty states that the contract is ongoing unless timely cancelled.

*"Article IX.* This Agreement shall continue in full force and effect unless cancelled at its anniversary date by either party giving to the other not less than ninety (90) days' notice in writing of their desire to do so. It is understood and agreed, however, that if this Agreement should expire while a loss to the Company is in progress, the Reinsurers shall be liable as if the whole loss occurred during the period of this Agreement."

The most recent addendum placing the reinsurance risk with Citizens which is in the record does not contain a cancellation date. It reads as follows:

*"Revised Addendum No. 7. Attached To And Forming Part of Contract No. 182 In The Name Of Master Plumbers Limited Mutual Liability Company.*
"It is hereby noted and agreed that effective 12:01 A.M., January 1, 1963, wherever the words, 'the Reinsurers' appear in this Contract, same shall be understood to mean the Citizens Casualty Company of New York.
"All other terms and conditions remain unaltered."

This addendum, dated June 26, 1963, is signed by Master Plumbers and Citizens Casualty by Agency Managers.

The only evidence admitted at trial from which this court could impute notice of Citizens' insolvency consists of the written opinions of the New York courts. The earliest finding of insolvency was as of December 31, 1967. The latest date in the record when defendants placed the risk with Citizens, however, was in 1963. As

to that year there is no evidence by which to infer defendants knew or should have known Citizens faced insolvency.

Master Plumbers introduced and the court admitted pages from *Best's Insurance Guide* which digest financial data for various companies. While they indicate that Citizens sustained underwriting losses for five years between 1962 and 1967 these figures did not establish insolvency.

Master Plumbers also introduced an exhibit which was not admitted into evidence. This purports to be a portion of a report by the State of New York Insurance Department dated May 14, 1962 and "filed" January 21, 1965. The trial court did not err in finding that no foundation was laid for admission of this purported report. The court was not apprised, nor is this court, of its authenticity or its status as a final or approved report, or of whether it was in the public domain.

In summary, no evidence was introduced at trial tending to show defendants knew or should have known Citizens had financial problems when, in 1963, it placed Citizens on the reinsurance risk. Nonsuit was properly granted.

*By the Court.*—Judgment affirmed.