**HIGGINBOTHAM & ASSOCIATES, INC., et al., Appellants,**

v.

**Jack E. GREER, Individually, and d/b/a Caddo Lanes, Appellee.**

No. 9546.

Court of Appeals of Texas, Texarkana.

Sept. 9, 1987.

Rehearing Denied Oct. 6, 1987.

Herbert Boyland, Kenley & Boyland, Longview, for appellants.

Melvin Wilcox, III, Smead, Anderson, Wilcox & Dunn, Longview, for appellee.

CORNELIUS, Chief Justice.

This case presents the issue of an insurance agent's liability when he places a client's insurance with a company which later becomes insolvent and unable to pay the client's claim. Based on jury findings of negligence on the part of the agent, the district court rendered judgment for the client. Because we find no evidence of negligence, we reverse and render a take nothing judgment.

In 1980, Jack Greer purchased a bowling center in Marshall, Texas. He insured the center by a multi-peril insurance policy written by Proprietors Insurance Corporation (PIC), an Ohio company. The policy was procured by appellant Higginbotham, an independent insurance agent in Fort Worth. The center was destroyed by fire in 1981. After the fire Higginbotham submitted Greer's claim to PIC, and a check in payment of the loss was issued. The check was deposited but was returned unpaid because PIC had become insolvent.

Greer sued Higginbotham alleging negligence in the procurement of the policy and misrepresentations under the Texas Deceptive Trade Practices Act. The jury found for Greer on both causes of action, but the district court disregarded the finding of misrepresentation. Higginbotham brings several points of error, including the assertion that the evidence is insufficient to support a finding of negligence. Greer's cross-points urge that the jury's finding of misrepresentation should not have been disregarded and that he was entitled to treble damages under the Deceptive Trade Practices-Consumer Protection Act. We agree that there is no evidence of Higginbotham's negligence, and also find that the district court properly disregarded the jury's finding of misrepresentation.

The general rule is that an insurance agent or broker is not a guarantor of the financial condition or solvency of the company from which he obtains the insurance. He is required, however, to use reasonable skill and judgment with a view to the security or indemnity for which the insurance is sought, and a failure in that respect may render him liable to the insured for resulting losses. Thus, where a policy is procured in a company known by the agent to be insolvent, the agent is liable for a loss suffered by reason of such insolvency. On the other hand, where the company was

solvent when the policy was procured, its subsequent insolvency generally does not impose liability on the agent or broker. 3 Couch on Insurance 2d § 25:48 (rev.1984); 43 Am.Jur.2d *Insurance* § 143 (1982); Annot., 29 A.L.R.2d 171, 182 (1953).

The Texas cases which have applied these rules have been cases where the policy was procured in a company known by the agent to be insolvent either before the policy's procurement or at some point before a loss occurred. In *Diamond v. Duncan,* 107 Tex. 256, 172 S.W. 1100 (1915), our Supreme Court upheld liability where following procurement of a policy the agent became aware of the insurance company's insolvency, but did nothing to protect his insured's interests. Liability has also been imposed on an agent who placed insurance with a company he knew was insolvent from the outset. *Hancock v. Wilson,* 173 S.W. 1171 (Tex.Civ.App.-Dallas 1915, no writ). And, *Cateora v. British Atlantic Assurance, Ltd., of Nassau,* 282 F.Supp. 167 (S.D.Tex.1968), involved an insurance agency that had actual knowledge prior to the insured's loss that the company they selected was not paying claims and had somehow disappeared. The court ruled that from the time the agent was apprised of the insolvency his duty to advise the insured attached.

While those cases are illustrative of the general rules regarding insurer insolvency and negligence, they do not directly address the issue before us because in each of them, the agent had actual knowledge of insolvency during a time when an insured could have been protected. The facts here more · closely resemble those in *Master Plumbers Limited Mutual Liability Co. v. Cormany & Bird, Inc.,* 79 Wis.2d 308, 255 N.W.2d 533 (1977). There, the Wisconsin Supreme Court held that an agent is not liable for a loss which occurs when he places a policy with a solvent company that later becomes insolvent, and that an agent's alleged negligence must be considered in light of his knowledge at the time the policy was issued and not at the time of loss and failure to pay the claim. *Id.,* citing *Williams-Berryman Ins. Co. v. Morphis,* 249 Ark. 786, 461 S.W.2d 577

(1971); *see also, Kane Ford Sales, Inc. v. Cruz,* 119 Ill.App.2d 102, 255 N.E.2d 90 (1970); *Sternoff Metals Corp. v. Vertecs Corp.,* 39 Wash.App. 333, 693 P.2d 175 (1984).

■ We find these authorities persuasive, and conclude that an agent is not liable for an insured's lost claim due to the insurer's insolvency if the insurer is solvent at the time the policy is procured, unless at that time or at a later time when the insured could be protected, the agent knows or by the exercise of reasonable diligence should know, of facts or circumstances which would put a reasonable agent on notice that the insurance presents an unreasonable risk.

■ Greer attempts to avoid the rule here by arguing that this is not an insurer insolvency case but rather a case of an agent's overall negligence in failing to provide his client the best available insurance at the best price. The only damage he claims, however, is his loss due to the insurer's insolvency. He has not alleged or proven that Higginbotham either failed to procure a policy or allowed it to lapse, or that the PIC policy failed to provide full coverage, or contained unwarranted exclusions, or cost more money than it should have. Indeed, he candidly states in his brief: "The PIC policy provided the correct coverage, the company was simply unable to pay the claim." Yet, all of the cases he relies on are cases where matters other than insolvency caused the loss. *See Kitching v. Zamora,* 695 S.W.2d 553 (Tex. 1985); *Continental Casualty Company v. Bock,* 340 S.W.2d 527 (Tex.Civ.App.-Houston 1960, writ ref'd n.r.e.); *Shippers' Compress Co. v. Northern Assur. Co.,* 208 S.W. 939 (Tex.Civ.App.-Beaumont· 1919, writ ref'd); *see also, Bell v. O'Leary,* 744 F.2d 1370 (8th Cir.1984); *Butler v. Scott,* 417 F.2d 471 (10th Cir.1969). The only damage in this case was caused by the insurer's insolvency. Any other negligent act would not be a proximate cause of the loss in any event.

Applying the above stated rule to the facts of this case, we find no evidence to

support the jury's finding that Higginbotham was negligent. It is undisputed that at the time of procurement Higginbotham had no actual knowledge of any financial instability within PIC, and there is no evidence which demonstrates that he reasonably should have known that the coverage would represent an unreasonable risk. PIC was a fully admitted and approved carrier in Texas and therefore was subject to financial analysis and other requirements by the State Board of Insurance. At the time the policy was written, PIC was paying its claims promptly, was paying dividends to its policyholders, and had made an underwriting profit the year before. PIC was rated B+ (very good) by the Alfred M. Best insurance analysis company for the preceding year.

In arguing that there is sufficient evidence, Greer relies on the testimony of his expert witness, Ronald Horne. Horne stated that the B+ rating given to PIC for the years 1979 and 1980 placed PIC in the lower twenty-five percent of Best's rated companies for that year. Nevertheless, Horne conceded that the B+ rating signified "very good" by Best's rating standards, and that an agent could properly place coverage with such a company, so long as the client was "generally informed of what's going on." Horne also stated that in general, a declining Best rating over a period of five to seven years was a pretty good indication a company was headed for financial trouble. Horne then charted the Best rating for PIC for the years 1975 through 1980. In 1975 and 1976, PIC had an A rating which fell to a B+ rating for the years 1977 through 1980. Horne observed, however, that the rating had leveled off for four years in a row, which he stated was a sign of stability. He also pointed out that the Best report indicated that PIC had placed greater reliance on reinsurance, but explained that this indicated PIC was growing too rapidly and that reinsurance was used for PIC to protect itself. It was also established that the lost profit PIC encountered in 1978 had been cured, as they were making a profit in 1979 and their financial stability had leveled off for four to five years. It was undisputed that PIC was an admitted, authorized carrier in Texas at all relevant times. There is nothing in this testimony constituting evidence that a reasonable agent would have known or should have known that PIC constituted an unreasonable risk at the time the insurance was procured, or at any time prior to the loss.

Additionally, the evidence shows that Greer knowingly exercised an independent choice to insure his property with PIC. The prior owner of the center, Ronald Rhodes, was insured by PIC through Higginbotham. Rhodes told Bob Ballard, who worked for Higginbotham, about the forthcoming sale to Greer, told him that Greer had reviewed and was satisfied with the current insurance coverage, and wanted to continue it as it was then written. Ballard contacted Greer about the continued coverage, and Greer agreed he was interested in continuing the policy as written. Greer then called Rhodes and inquired about coverage and about the reliability of Higginbotham. Rhodes told Greer Higginbotham was a reputable company and recommended Ballard as an agent. Greer then told Ballard to take care of the coverage.

These facts conclusively demonstrate that Greer selected the insurance he wanted, and there is no evidence to support a finding of negligence on the part of Higginbotham. If it can be considered that some evidence supports the jury finding of negligence, we find that evidence to be factually insufficient to support the answer.

■ We next consider Greer's cross-points which contend that the district court erred in disregarding the jury's affirmative answer to the misrepresentation special issue. Special Issue 2 reads:

Do you find from a preponderance of the evidence that the Defendant represented to Plaintiff that its services as an insurance agent were of particular standard, grade or quality, when in fact they were of another.

The court may disregard a special issue finding only if there is no support in the

evidence for the jury's answer. Tex.R. Civ.P. 301. We conclude that the trial court correctly disregarded the finding. There is no evidence that Higginbotham or Ballard made any express misrepresentation to Greer. Greer maintains that Ballard's statement that the Higginbotham agency represented the majority of the bowling centers in East Texas constituted a kind of implied representation that Higginbotham had special skill and expertise in placing that kind of insurance. Even if such a specific representation could be inferred from such a general statement, which we doubt (*see Employers Cas. Co. v. Fambro*, 694 S.W.2d 449 (Tex.App.-Eastland 1985, writ ref'd n.r.e.)), there is no proof that it was false. In any event, it could not have been a producing cause of any injury, because the jury found that Greer would have purchased the insurance from Higginbotham regardless of the alleged representation. To be actionable under the Deceptive Trade Practices Act, a misrepresentation must be material, i.e., must be a producing cause of the injury or damage. *See McCrea v. Cubilla Condominium Corp.*, 685 S.W.2d 755 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.).

It is not necessary to rule on Higginbotham's other points. The judgment of the trial court is reversed and judgment is here rendered that Greer take nothing.