Ernest W. CATEORA

v.

BRITISH ATLANTIC ASSURANCE, LTD., OF NASSAU, BAHAMAS, Millard E. Gaskill, Stanley R. Werts, Stan Mac Insurance Agency and M. S. Verner, Jr., d/b/a M. S. Verner, Jr. Insurance Agency.

Civ. A. No. 67–B–46.

United States District Court
S. D. Texas,
Brownsville Division.

March 22, 1968.

Storter & Carinhas, Jack G. Carinhas, Jr., Brownsville, Tex., for plaintiff.

Millard E. Gaskill, pro se.

Watkins, Ryan & Hamilton, Daniel P. Ryan, Jr., Houston, Tex., for defendants Stanley R. Werts and Stan Mac Ins. Agency.

Wiech, Lewis & Scanlan, Jack Weich, Brownsville, Tex., for defendant M. S. Verner, Jr., d/b/a M. S. Verner, Jr. Ins. Agency.

## MEMORANDUM AND ORDER

GARZA, District Judge.

This suit involves an action for declaratory judgment upon an admiralty and maritime claim within the meaning of Rule 9(h) and Rule 57, Federal Rules of Civil Procedure, and filed pursuant to the provisions of Title 28, Section 2201, U.S.Code.

The Plaintiff, Ernest W. Cateora, is seeking to require British Atlantic Assurance, Ltd., of Nassau, Bahamas (hereinafter called "British Atlantic") and its alleged agents, Stanley R. Werts, individually and d/b/a Stan Mac Insurance Agency (hereinafter called "Werts"), Millard E. Gaskill (hereinafter called "Gaskill"), and M. S. Verner, Jr., d/b/a M. S. Verner, Jr. Insurance Agency (hereinafter called "Verner") to defend him in compliance with a certain policy of marine protection and indemnity insurance.

A personal injury suit was filed against the Plaintiff in the United States District Court for the Eastern District of Texas, Beaumont Division, by one James W. Buchanan, a former crew member of Plaintiff's fishing vessel the MISS PORT ISABEL, in which he claims to have been injured on April 6, 1967. It was designated as Civil Action 5539 in the Eastern District of Texas, but the cause has been transferred to the Brownsville Division of this Court, and bears the number C.A. 67–B–82.

This suit by Buchanan against the Plaintiff in this court is still pending, and the Plaintiff has had to defend himself in this suit because his insurance carrier, British Atlantic, has failed to defend, even though there was in full force and effect a policy of marine protection and indemnity insurance, No. P.I. MMO 10563, issued to the Plaintiff and covering the shrimping vessel MISS PORT ISABEL, which policy had been issued on the 25th day of April, 1966, and the premiums duly paid thereon.

The Defendants Stanley R. Werts and Stan Mac Insurance Agency appeared through counsel and filed a motion to dismiss, which motion was overruled by this Court by Memorandum and Order filed on October 18, 1967, in which Memorandum the Court gave its reasons for denying the motion to dismiss.

The Defendant Millard E. Gaskill answered pro se, and even though duly notified of all hearings, has never appeared before the Court either in person or through counsel.

The Defendant Verner appeared through counsel.

The Defendant British Atlantic has failed to answer or to appear at any hearing, and has completely made default. Such default was noted on October 18, 1967.

A hearing was held in this cause on November 20, 1967, and was mainly on the motion of the Plaintiff to strike the jury demand of Stanley R. Werts and Stan Mac Insurance Agency. The Court granted the motion of the Plaintiff to strike the jury demand of the Defendant Werts and his Insurance Agency, holding in regard to the jury demand by the Defendant Werts and his Agency that it is quite clear from the applicable law that no jury right exists. This cause of action is clearly one upon an admiralty and maritime claim within the meaning of Rule 9(h), and the Plaintiff has so labeled his complaint. This Court's jurisdiction is based upon the admiralty nature of the claim, and none other; and the Defendant had no right to a jury. Texas Menhaden Co. v. Palermo, 329 F.2d 579, 5 C.C.A.1964. Judge Noel, of this Court, has apparently held the same way in the case of McCann v. Falgout Boat Co., 44 F.R.D. 34, in a Memorandum filed February 7, 1968.

Rule 38, which provides for juries, was amended in 1966 to provide:

"These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9 (h)." Rule 38(e), F.R.Civ.P.

See, also, Insurance Company of Pennsylvania v. Amaral, 44 F.R.D. 45, Southern District of Texas, February 28, 1968.

At the hearing on November 20, 1967, the Court again noted the default of the Defendant British Atlantic under Rule 55, F.R.Civ.P., and set the case for trial on its merits on January 4, 1968.

At the trial, evidence on the following issues was heard:

Were the Defendants Werts, Gaskill and Verner in fact agents of British Atlantic?

If so, what were their responsibilities and liabilities to the Plaintiff, if any?

During the course of the trial, a further issue of negligence on the part of the Defendant Verner was raised by the evidence heard, and the Plaintiff was allowed a trial amendment to include the question of negligence as to the Defendant Verner. The Defendant Verner sought, and was granted, a further hear-

ing on the trial amendment as to negligence, and such hearing was held and evidence heard on March 19, 1968.

The evidence adduced at the different hearings before the Court was that sometime in the early part of 1966, one Alf P. Shatto, a solicitor for Verner, approached the Plaintiff about the possibility of his agency placing Plaintiff's insurance on his various shrimp boats.

Due to the tempting offer of lower rates, coupled with the fact that the Plaintiff had been somewhat disappointed with his previous company, and knowing that the Verner Insurance Agency was the successor to the Carnesi Insurance Agency which had been owned by a now well respected banker in Brownsville, the Plaintiff decided to place his insurance with the Defendant Verner's Agency.

The Defendant Verner was rather new to the insurance business, and had never tried to place any maritime insurance until Shatto came to work for him. Shatto had been in the insurance business in Houston for many years, and induced the Defendant Verner to start writing insurance on shrimp boats in the area. It was at the insistence of Shatto that Verner made connections with the Defendant Werts and the Stan Mac Insurance Agency to write insurance on shrimp trawlers in this area, including the MISS PORT ISABEL owned by the Plaintiff herein.

The evidence further shows that the Verner Agency forwarded Plaintiff's application for marine insurance upon the trawler MISS PORT ISABEL to the Defendant Werts in Houston. The Defendant Werts, in turn, ultimately had the insurance placed with the Defendant British Atlantic, and the policy noted above was issued to the Plaintiff, covering the period from April 25, 1966, to April 25, 1967.

The policy in question was sent to the Defendant Verner's Agency, and it, in turn, delivered the policy to the Plaintiff. Verner collected the premium due on the policy, deposited the gross premium in his bank account, and thereafter forwarded his Agency's check to the Defendant Werts for the net premium collected, after deducting his fifteen per cent commission.

British Atlantic was an unauthorized alien insurance company doing business in the State of Texas without authority or license from the State of Texas or the Board of Insurance Commissioners of said State.

There is no question but that the Plaintiff properly and timely notified all of the Defendants of the accident and of his request to be defended in the Buchanan suit; but from the evidence before me, there is no question but that the Defendant British Atlantic was defunct and had disappeared from the scene. As a result, the Plaintiff herein has not been defended, and there is little expectation that the Defendant British Atlantic is going to come forward to make any payment for any liability Plaintiff may be responsible for to Buchanan.

The Plaintiff herein is claiming that Defendants Werts, Stan Mac Insurance Agency, Gaskill and Verner are also jointly and severally liable as agents for any losses the Plaintiff may suffer as a result of Defendant British Atlantic's failure to come forward and accept its responsibilities.

This Court must also determine if the Defendant Verner was negligent in failing to notify the Plaintiff that the Defendant British Atlantic was insolvent, and in failing to replace his insurance.

We will now examine the Defendants one by one to determine their liability.

■ The Defendant British Atlantic has already been ruled against. There is no question but that the policy was in effect when the accident in question occurred, and that said accident was a risk covered by the policy. Its failure to come forward and defend the Plaintiff, or even to appear in this suit, entitles the Plaintiff to a judgment by

default against it, and British Atlantic Assurance, Ltd., of Nassau, Bahamas, will be liable for the losses which the Plaintiff has already suffered and will suffer, as a result of its default.

One of the provisions of the Texas Insurance Code, V.A.T.S. is Article 21.02, entitled "Who Are Agents". It reads as follows:

"Art. 21.02 Who Are Agents

"Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. * * * Any person who shall do any of the acts mentioned in this article for or on behalf of any insurance company without such company having first complied with the requirements of the laws of this State, shall be personally liable to the holder of any policy of insurance in respect of which such act was done for any loss covered

by the same. Acts 1951, 52nd Leg., Ch. 491."

This article spells out what activities make one an agent, and also the liability of agents.

It is undisputed in the pleadings, and the certificate of the State Board of Insurance clearly shows, that the Defendant British Atlantic is not now complying, and never has complied, with the insurance laws of the State of Texas. It is unauthorized to do any type of insurance business in Texas.

■ From the facts and evidence before this Court, there is no question but that Stanley R. Werts, the Stan Mac Insurance Agency, Millard E. Gaskill and M. S. Verner, Jr., d/b/a M. S. Verner, Jr. Insurance Agency, were agents of the Defendant British Atlantic. The Defendant Werts placed numerous policies with the Defendant British Atlantic, and had numerous dealings with British Atlantic. The Defendant Gaskill worked for the Defendant Werts as his bookkeeper, and was also an underwriter and claim adjuster for the Defendant British Atlantic. There is no real question as to Defendant Gaskill's agency.

The Defendant Verner also meets the test of Article 21.02. His agency solicited the Plaintiff's business, transmitted Plaintiff's application for insurance, received and delivered the policy of insurance in question, examined the risk involved, and received, collected and transmitted he policy premium. His agency placed many policies with British Atlantic through the Stan Mac Insurance Agency, and received commissions for the same.

■ Unless some valid defense is shown, it appears that each of these Defendants is going to be jointly and severally liable under Article 21.02 for the losses covered by Plaintiff's policy with British Atlantic.

The Defendant Werts, at the time the policy in question was issued, was also licensed as a surplus line agent pursuant

to then existing Article 21.38 of the Texas Insurance Code.[1]

This license as a surplus line agent enabled the Defendant Werts to legally procure insurance for clients with out-of-state insurance companies not authorized to do business in Texas.

Section 3 of Article 21.38 provides in part:

" * * * but agents licensed hereunder acting pursuant to this article may issue and deliver to their clients, the insured, binders, policies and other confirmation of direct insurance so lawfully placed, and shall not be personally liable to the holder of any policy of insurance so issued or delivered for any loss covered by same."

The Defendant Werts, and the Defendant Verner indirectly, are both relying on this article to relieve them of liability. At first blush it would appear that this is a valid defense, but upon close examination, they may not rely on it.

The Legislature of the State of Texas realized that all of its citizens could not obtain their insurance needs from insurance companies authorized to do business in Texas, and through Art. 21.38 (now Art. 1.14–2) proceeded to allow its citizens to obtain such insurance from companies not authorized to do business in Texas, but to offer those having to do so certain protections, one of which was to subject certain unauthorized insurers to the jurisdiction of the Courts of this State.

■ Article 21.38 that this case is subject to, and its successor, Art. 1.14–2, are highly regulatory and must be strictly complied with. Any party failing to strictly comply will be subjected to the liabilities imposed by Art. 21.02, cited previously.

Before a Texas citizen can obtain so-called surplus line insurance, an affidavit from the one seeking the insurance must be filed with the State Board of Insurance of the State of Texas, that after diligent effort he has not been able to obtain insurance coverage with an authorized company for the full amount needed, and also that the amount obtained from an unauthorized insurer is only the excess unobtainable from licensed insurers.

The record shows that the Plaintiff in this cause, Cateora, never knew, nor was he told, that British Atlantic was not an authorized insurance carrier in Texas. He was never asked to sign the affidavit that is required for surplus line insurance; but a forged affidavit bearing his name was sent to the State Board of Insurance. The false affidavit was notarized by the Defendant Werts' secretary, and it was mailed by Werts and the Stan Mac Insurance Agency to the State Insurance Board.

The evidence before the Court has made it abundantly clear that the Plaintiff Cateora would have been able to obtain insurance from an insurance company authorized to do business in Texas; had had his insurance with an authorized insurance company; and after the expiration of the policy in question, obtained insurance from an authorized company.

■ Article 21.38, Section 3, contemplates that the surplus line agent, Defendant Werts in our case, will deal directly with the client in delivering policies, binders, etc. It is undisputed that the Defendant Werts used a middleman, Defendant Verner, and never once contacted the Plaintiff. The Defendant Werts violated the intent of Article 21.38, and misused his license for his own personal gain, and will, therefore, not be protected by it.

The Defendant Stanley R. Werts, individually, and the Stan Mac Insurance Agency are, therefore, liable, jointly and severally, to the Plaintiff to the same extent as British Atlantic under the policy.

1. This Article was repealed by the 60th Legislature, effective May 12, 1967; but has now been re-enacted substantially the same as Art. 1.14–2 which became effective on the same date of May 12, 1967.

█ Little need be said about the sly and enigmatic Defendant Millard E. Gaskill. This defendant wore many shoes. He served as bookkeeper for the Defendant Werts and also as claim adjuster and underwriter for British Atlantic. The evidence is clear that he was top man for British Atlantic in Texas. He has not proven that he had any kind of license. Therefore, the Defendant Gaskill will be liable, jointly and severally, to the Plaintiff in a like manner as British Atlantic is under the policy in question.

Turning now to the Defendant Verner, as has been stated before he was new at the insurance business and apparently relied on his employee Shatto in getting into the marine insurance field. It is doubtful that he even knew about the requirements of surplus line insurance, and there is no question that he was acting as a broker and relied on the Stan Mac Insurance Agency to comply with the requirements of the law.

Under all the facts, Defendant Verner could very easily be held liable just under the provisions of Art. 21.02; but because of the circumstances, he might be excused. However, the Plaintiff has properly charged him with negligence.

The record shows that the last boat that Verner obtained insurance for through the Stan Mac Insurance Agency was the ROSE MARIE, and this insurance was obtained on the 14th of November, 1967. He was thereafter unable to obtain any more marine insurance through the Stan Mac Insurance Agency, as he was told that British Atlantic had lost its re-insurance contract and was seeking a new one. It seems that such is common in the insurance business, but this should have alerted Verner to scrutinize the actions of British Atlantic thereafter.

The Verner Agency, through Stan Mac Insurance Agency, had also placed several automobile policies with British Atlantic, mainly for people residing in Matamoros, Mexico, who had loans on their automobiles with a Brownsville bank. In late December 1966, and January 1967, the bank notified Mr. Verner that they had received cancellation notices on several automobiles that he had insured through the Stan Mac Insurance Agency; and by the 16th of February, he was seeking re-insurance for automobiles covered by ten policies so canceled.

It seems that policy cancellations in the automobile insurance business are not uncommon, but during the same month of February, 1967, the Defendant Verner dispatched his ex-employee Shatto (who had quit his employment in October, 1966, and had entered the insurance business on his own) to Houston to look into the affairs of British Atlantic; and Shatto reported that it did not look good for getting the unused premiums back from British Atlantic, and that the Stan Mac Insurance Agency was apparently in a squabble with British Atlantic with regard to the cancellations. The Defendant Werts also testified that in the middle of February, 1967, he informed Verner that British Atlantic had apparently gone defunct and disappeared.

The evidence also shows that another vessel insured through Verner by the Isbell Enterprises, Inc., apparently was grounded, and a claim filed in November, 1966. The evidence shows that by late January the surveys were forwarded to British Atlantic, but that British Atlantic had never come forward to either allow or reject the claim of Isbell, and that has given rise to another cause of action by Isbell Enterprises, Inc., against the same defendants and on the same basis as the present lawsuit, which cause is pending on the docket of this Court.

While the evidence shows that in late January British Atlantic paid a claim on a yacht, British Atlantic was already in deep trouble.

█ By the middle of February, 1967, the Defendant Verner knew, or should have known, that British Atlantic had disappeared from the scene, was insolvent, and was not taking care of its obligations. From that time on, the Defend-

ant had the obligation to advise the Plaintiff Cateora of the situation or to replace his insurance with someone else. This he failed to do.

The Defendant Verner has filed a supplemental brief, claiming that he had no legal duty to notify the Plaintiff, and citing many out-of state cases to the effect that when an insurance agent sells a person a policy with a solvent company and then the company becomes insolvent, he has no duty to inform the insured, as an agent cannot serve two masters.

Mr. Verner will not be allowed to wear two hats here. He first claims that he was not an agent of British Atlantic, but was acting through the Stan Mac Insurance Agency; and now he tries to avoid his negligence by citing to the Court law that does not jibe with his position here.

The law in Texas is very clear. An old 1915 case by the Supreme Court of Texas has withstood the test of time. The case is Diamond v. Duncan, 107 Tex. 256, 172 S.W. 1100. This case established in Texas the duty of an insurance agent to inform his clients when said agent knew that the insurer had become insolvent, or to replace the insurance.

By the middle of February, 1967, the Defendant Verner knew, or should have known, as has already been found, that British Atlantic was insolvent; and Diamond v. Duncan imposed on him the duty of informing his client, Cateora, or placing his insurance somewhere else.

Because of Defendant Verner's failure to either notify Cateora of the insolvency of British Atlantic, or to replace his insurance with some other company, the Plaintiff finds himself in a position where he has to defend himself from claims which he thought were covered by a good insurance policy.

I, therefore, find that the Defendant Verner was negligent, and that his negligence has caused the Plaintiff to suffer damages. The Defendant Verner will be jointly and severally liable with British Atlantic and the other defendants herein for any and all amounts for which the Plaintiff will be liable as a result of British Atlantic's failure to defend and pay claims on the Buchanan suit.

A local agent, such as Verner, owes his clients the greatest possible duty. He is the one the insured looks to and relies upon. Most people do not know what company they are insured with. The insured looks to the agent he deals with to get the coverage he seeks, with a sound company who can and will properly and promptly pay claims when they are due. It is his duty to keep his clients fully informed so that they can remain safely insured at all times.

Here an insured, without any necessity therefor, paid a premium on a policy issued by an unauthorized company, had his name forged to an affidavit, and paid a premium to no avail. This, we cannot stand for, and all those participating must be held accountable.

The attorney for the Plaintiff will prepare an appropriate judgment holding British Atlantic Assurance, Ltd., of Nassau, Bahamas; Stanley R. Werts, Stan Mac Insurance Agency; Millard E. Gaskill; and M. S. Verner, Jr., d/b/a M. S. Verner, Jr. Insurance Agency, jointly and severally liable to the Plaintiff for all attorney's fees, costs in defending the suit by Buchanan, and also for any amount that the Plaintiff has to pay to Buchanan either by judgment or by settlement.

Exemplary damages are denied, as are the attorney's fees for bringing this present cause of action.

The Clerk will send copies of this Memorandum and Order to counsel for all parties and to the Defendant Millard E. Gaskill.