Patricia SHUMOSKY and Joseph
Shumosky, Her Husband,
Appellants,

v.

LUTHERAN WELFARE SERVICES
OF NORTHEASTERN PA, INC. t/a
and d/b/a Hospice/St. John, and Ba-
yada Nurses, Inc., Appellees.

Patricia Shumosky and Joseph
Shumosky, Her Husband

v.

Lutheran Welfare Services of Northeast-
ern Pa, Inc. t/a and d/b/a Hospice/St.
John, and Bayada Nurses, Inc.

Appeal of Lutheran Welfare Services
of Northeastern Pa, Inc.

Superior Court of Pennsylvania.

Submitted June 4, 2001.
Filed Oct. 3, 2001.

Marion K. Munley, Scranton, for Shumoski.

Patrick C. Carey, Scranton, for Lutheran Welfare Services.

John J. Hatzell, Philadelphia, for Bayada Nurses, appellee.

Before: DEL SOLE, P.J., ORIE MELVIN and BROSKY, JJ.

MELVIN, J.

¶ 1 Appellants, Patricia and John Shumosky, appeal from the October 31, 2000 Order of the Court of Common Pleas of Lackawanna County entered on November 3, 2000, which granted summary judgment in favor of Lutheran Welfare Services of Northeastern Pennsylvania, Inc. t/a and d/b/a Hospice/St. John (Lutheran Welfare Services). Additionally Cross–Appellant, Lutheran Welfare Services appeals from the April 14, 1997 Order dismissing its third-party complaint against Bayada Nurses, Inc. (Bayada). For the following reasons, we reverse the Order of October 31, 2000 and affirm the Order of April 14, 1997.

¶ 2 The present suit arises out of injuries allegedly sustained by Patricia Shumosky. Bayada employed Mrs. Shumosky as a licensed practical nurse. Bayada was under contract to provide nursing services to Lutheran Welfare Services. On April 16, 1993, Mrs. Shumosky, while providing home nursing care to a Lutheran Welfare Services patient, accidentally pricked her finger with a needle she had just used to give the patient an injection. At the end of her work shift, Mrs. Shumosky learned for the first time that the patient was suffering from Acquired Immune Deficiency Syndrome, an affliction more commonly known as AIDS. Mrs. Shumosky left the patient's residence and immediately upon arrival at her home contacted Bayada. At the instruction of Bayada, Mrs. Shumosky went to the emergency room at Nesbitt Memorial Hospital where she received a Human Immunodeficiency Virus (HIV) test and also a hepatitis B shot. The Lutheran Welfare Services patient that Mrs. Shumosky had treated died a few days later of AIDS related complications.

¶ 3 The Shumoskys initiated the instant suit alleging Lutheran Welfare Services negligently failed to inform her that the patient she was treating had AIDS and that she was provided with insufficient equipment to properly care for the patient. She further alleged that as a result of this negligent omission, she suffered "severe and permanent injuries, including post-traumatic stress disorder, which resulted in anxiety, depression, intrusive thought patterns, nightmares, fear, loss of appetite, weight loss of approximately 21 pounds, disinterest in sexual activity, sympathetic nervous systems, [and] headaches." Appellant's Second Amended Complaint, at ¶ 12. She further asserted she was unable

to work for a year following the incident and was unable to return to her chosen profession. The complaint also asserted a loss of consortium claim on behalf of her husband. The Shumoskys did not allege Mrs. Shumosky tested positive for HIV or that she has developed AIDS. Lutheran Welfare Services filed an answer and new matter denying the substance of the complaint's averments. Subsequently, Lutheran Welfare Services filed a complaint to join Bayada as an additional defendant seeking contribution and/or indemnification.

¶ 4 By Order of April 14, 1997, the Honorable Carlon O'Malley sustained preliminary objections of the additional defendant, Bayada, and dismissed the third-party complaint with prejudice. By Order of October 31, 2000, the Honorable S. John Cottone determined the Shumoskys failed to state a cognizable cause of action and therefore granted Lutheran Welfare Services' motion for summary judgment. These cross appeals followed.

¶ 5 We first address the Shumoskys' appeal, which presents the following issue:

> Whether the October 31, 2000 Order granting [Lutheran Welfare Services'] Motion for Summary Judgment should be reversed as [Lutheran Welfare Services] is not entitled to judgment as a matter of law and genuine issues of material fact exist as to whether a nurse who sustained a needle stick with a needle used for an injection of an AIDS patient can state a claim for physical and emotional injury when she did not develop AIDS?

Shumoskys' Brief, at 4.

¶ 6 When reviewing an entry of summary judgment, it is well settled that:

> [W]e must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free from doubt. Our scope of review is plenary.

*Valles v. Albert Einstein Medical Center,* 758 A.2d 1238, 1243 (Pa.Super.2000).

¶ 7 The trial court determined Mrs. Shumosky's averments did not set forth a cognizable cause of action. It reached this conclusion based on this Court's holdings in *Lubowitz v. Albert Einstein Med. Center,* 424 Pa.Super. 468, 623 A.2d 3 (1993) and *Doe v. Philadelphia Community Health Alternatives AIDS Task Force,* 745 A.2d 25 (Pa.Super.2000). The trial court interpreted these holdings for the broad proposition that Pennsylvania does not recognize any cause of action for fear of contracting AIDS. We disagree with this overly broad application. Rather, we find *Lubowitz* and *Doe* are factually distinguishable.

¶ 8 In order to recover for negligent infliction of emotional distress a plaintiff must establish, as in any other negligence case, the defendant's breach of a duty and damages proximately caused thereby. In the context of a claim for emotional distress the action may be sustained under the impact rule, the zone of danger rule or the bystander rule.

¶ 9 Initially, the law of this Commonwealth only allowed recovery for injuries resulting from mental distress where they were ac-

companied by physical injury or physical impact. *Knaub v. Gotwalt*, 422 Pa. 267, 220 A.2d 646 (1966). The impact rule was expanded by our Supreme Court in *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970), wherein the court stated:

> We today choose to abandon the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort in only those cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact.

*Niederman*, 436 Pa. at 413, 261 A.2d at 90. The *Niederman* ruling permitted recovery for infliction of emotional distress in the absence of physical injury or impact when the individual inflicted with emotional distress was in the "zone of danger" of injury or impact.

¶ 10 A further expansion of this rule was adopted in *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). In *Sinn*, our Supreme Court held that a mother who witnessed an automobile strike her child, causing fatal injury, could state a claim for emotional distress against the driver of the automobile, despite the fact that the mother had witnessed the accident from beyond the zone of danger. In creating this exception to the zone of danger rule, the Court reasoned that while the emotional distress suffered by an individual in the zone of danger typically results from a fear for his or her own safety, in the case of a parent witnessing his or her child's injury, "the emotional impact [is] most probably influenced by the event witnessed—serious injury to or death of the child—rather than the [parent's] awareness of personal exposure to danger." *Id.* 486 Pa. at 157–58, 404 A.2d at 678. Accordingly, "the emotional impact upon a mother witnessing the sudden and violent death of her small child [from beyond the zone of danger] is unquestionably as traumatic as would have been the case if the mother had also been within the zone of danger." *Id.* 486 Pa. at 167, 404 A.2d at 683. This exception has come to be known as the bystander rule.

¶ 11 In the instant matter, the Shumoskys argue that the trial court erred when it entered summary judgment against her because she sufficiently stated a cause of action for negligent infliction of emotional distress under the impact rule. She contends Lutheran Welfare Services was negligent for failing to provide her with sufficient medical equipment to properly care for the patient and in failing to inform her that the patient had AIDS. She asserts that "had she been informed that the patient suffered from AIDS she would not have accepted the assignment." Brief for Appellants, at 13. Mrs. Shumosky further contends that the prick of the needle constitutes physical injury sufficient to substantiate her claim for negligent infliction of emotional distress. In essence, Mrs. Shumosky asserts that the emotional distress resulting from her being stuck by a needle used on an AIDS patient is a natural consequence of that physical injury. We agree.

¶ 12 The courts of this Commonwealth have long permitted recovery of emotional distress damages that are accompanied by direct physical injury caused by a defendant's negligence. These so-called "parasitic" damages are allowed even where the physical injury is relatively minor. In *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174 (1992), a trainee at a fire-fighting school, during a simulated exercise, put on an airpack which had been mistakenly filled with carbon monoxide instead of oxygen. He suffered minor physical injuries as well as

consequential psychological and emotional injuries. Our Supreme Court held:

> It is simple black letter law that a tort-feasor must take its victim as it finds him. Plaintiff–Appellant suffered objective, measurable, observable physical injuries here (although they were relatively mild). All of the consequent psychological and emotional pain and suffering is compensable in that situation, and our law has long so held under the so-called 'impact rule.'

*Id.* 531 Pa. at 165, 611 A.2d at 1177. Stated differently, "where ... a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of damages." *Brown v. Philadelphia College of Osteopathic Medicine,* 449 Pa.Super. 667, 674 A.2d 1130, 1135–36 (1996) (quoting *Potere v. City of Philadelphia,* 380 Pa. 581, 588, 112 A.2d 100, 104 (1955)); *see also Zelinsky v. Chimics,* 196 Pa.Super. 312, 175 A.2d 351 (1961) (citing cases). Accordingly, parasitic damages for fear of AIDS are available where there is a verifiable causal connection between the injury and the possible development of AIDS. Here, as in *Botek,* Mrs. Shumosky alleges an objective, measurable, and observable physical injury, albeit a needle-stick. Thus, provided Mrs. Shumosky can prove Lutheran Welfare Services was negligent and that her injuries were proximately caused, she may recover for the emotional distress that consequentially flowed from this alleged physical injury.

¶ 13 With respect to establishing a causal nexus, the majority of jurisdictions addressing the issue impose an objective standard for determining proximate cause of emotional distress arising from the fear of contracting AIDS[1]. This objective standard requires proof of actual exposure to HIV. *See Brzoska v. Olson,* 668 A.2d 1355, 1363 (Del.1995) (stating that "without actual exposure to HIV, the risk of its transmission is so minute that any fear of contracting AIDS is per se unreasonable."); *see also* Wendy Allison Reese, *Tort Law Actual Exposure or Possible Exposure?: The Aids Phobia Debate—Are Courts Opening the Litigation Floodgates or Illustrating Judicial Proscription?* 22 Am. J. Trial Advoc. 495, 502 (1998) (collecting cases). Actual exposure requires more than mere presence of an infected specimen. Rather, the existence of a scientifically accepted method of transmission of the virus must coalesce with the presence of an HIV positive specimen. *See e.g, Pendergist v. Pendergrass,* 961 S.W.2d 919, 926 (Mo.Ct.App.1998). We find Pennsylvania caselaw is consistent with the latter combined approach.

¶ 14 The trial court's reliance on *Lubowitz* and *Doe* is misplaced. In *Lubowitz,* the plaintiff/wife underwent in-vitro fertilization. The embryo was fertilized in donated placental serum. After implantation, the plaintiffs were notified that the placental blood had tested positive for the AIDS antibody. After receiving this news Mrs. Lubowitz began to experience significant physical and emotional distress. She twice tested negative for AIDS and a subsequent test on the placental blood proved to be negative for the AIDS antibody. This Court considered her claim of negligent infliction of emotional distress and found there was no legally cognizable injury. While the plaintiff/wife alleged physical manifestations of the emotional distress, there was no physical injury or actual exposure.

---

1. *See* Eric S. Fisher, *AIDSPHOBIA: A National Survey of Emotional Distress Claims for the* *Fear of Contracting AIDS,* 33 Tort & Ins. L.J. 169 (1997).

¶ 15 Similarly, in *Doe, supra,* the plaintiff requested HIV testing following an "unsafe sexual experience." The results of the first two tests were indeterminate. A third test indicated a positive result for HIV. Plaintiff underwent treatment, and as part of the treatment he was advised to participate in a clinical study for AIDS patients with tuberculosis. As part of the screening process for the study he was again tested and determined to be HIV negative. Subsequent tests confirmed this negative result. In his suit against the hospital, his doctor and the testing lab, the plaintiff alleged negligent infliction of emotional distress with accompanying significant physical manifestations. On appeal from the grant of summary judgment in favor of the defendants this Court affirmed based on the rationale of *Lubowitz.* Again, as in *Lubowitz,* the plaintiff suffered no injury or actual exposure.

¶ 16 The fear of AIDS claims rejected in *Lubowitz* and *Doe* were predicated upon false-positive HIV tests. This Court denied recovery because the symptoms were caused by a mistaken belief that the plaintiffs were exposed to the virus. Consequently, the plaintiffs in these cases could not satisfy the actual exposure requirement. Moreover, other than the emotional distress itself, the element of a physical injury or impact was also lacking. Under such circumstances there is simply no objectively reasonable basis to fear contraction of the disease. Accordingly, what was implicit in *Lubowitz* and *Doe,* we now make explicit, that is, this Commonwealth's tort law is in accord with the majority view, requiring the plaintiff in a fear of AIDS case to show actual exposure to HIV. Additionally, in order to sustain this action we require the existence of a scientifically accepted method of transmission of the virus. As succinctly stated by the Missouri Court of Appeals:

Absent proof of actual exposure to the HIV virus as a result of a defendant's negligent conduct, that is, proof of both a scientifically accepted method, or channel, of transmission and the presence of the HIV virus, the fear of contracting AIDS is unreasonable as a matter of law and, therefore, not a legally compensable injury.

*Pendergist v. Pendergrass,* 961 S.W.2d 919, 926 (Mo.Ct.App.1998).

¶ 17 Instantly, we are not presented with a misdiagnosis of a disease. Rather, we are presented with facts alleging Mrs. Shumosky suffered a puncture wound to her hand from a needle used on an AIDS patient as a result of Lutheran Welfare Services' negligence. We find these facts satisfy the requirement of an actual exposure as defined in *Pendergist,* and if proven, could support recovery. Hence, the trial court erred in granting summary judgment under the facts alleged in this case. *See Murphy v. Abbott Laboratories,* 930 F.Supp. 1083 (E.D.Pa.1996) (analyzing Pennsylvania law and applying a similar standard to factually equivalent circumstances).

¶ 18 We now turn our attention to the appeal of Lutheran Welfare Services from the Order sustaining Bayada's preliminary objections in the nature of a demurrer and dismissing the complaint to join Bayada as an additional defendant.

Our standard of review mandates that on an appeal from an order sustaining preliminary objections which would result in the dismissal of suit, we accept as true all well-pleaded material facts set forth in the Appellant's complaint and all reasonable inferences which may be drawn from those facts. This standard is equally applicable to our review of PO's in the nature of a demurrer. Where, as here, upholding sustained preliminary objections would result in

the dismissal of an action, we may do so only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. We review for merit and correctness—that is to say, for an abuse of discretion or an error of law. This case was dismissed at the preliminary objections [sic] stage on issues of law; our scope of review is thus plenary.

*Marks v. Nationwide Ins. Co.*, 762 A.2d 1098, 1099 (Pa.Super.2000) (quoting *Donahue v. Federal Express Corp.*, 753 A.2d 238, 241 (Pa.Super.2000)).

¶ 19 Lutheran Welfare Services' sole issue on appeal asserts that Bayada is contractually obligated to provide indemnity for the claims made by the Shumoskys. Specifically, Lutheran Welfare Services argues that paragraph 15 in the contract with Bayada constitutes an express agreement to indemnify Lutheran Welfare Services, and as such it serves as a waiver of Bayada's employer immunity under the Pennsylvania Workers' Compensation Act (Act).

¶ 20 Section 303 of the Act, 77 P.S. § 481, provides in relevant part:

> (b) In the event injury or death to an employe is caused by a third party, then such employe ... may bring ... [her] action at law against such third party, **but the employer ... shall not be liable to a third party** for damages, contribution, or **indemnity** in any action at law, or otherwise, **unless liability for such** damages, contributions, or **indemnity shall be expressly provided for in a written contract** entered into by the party alleged to be liable.... (Emphasis added.)

Thus, unless indemnification is expressly provided for by contract, a third party may not seek indemnification from an employer. *Gerard v. Penn Valley Constructors, Inc.*, 343 Pa.Super. 425, 495 A.2d 210 (1985). "General indemnity language is insufficient to remove the bar to recovery created by the exclusivity provision of the [Act]." *Bethlehem Steel Corp. v. MATX, Inc.*, 703 A.2d 39, 43 (Pa.Super.1997) (citing *Bester v. Essex Crane Rental Corp.*, 422 Pa.Super. 178, 619 A.2d 304, 307 (1993), *appeal denied*, 539 Pa. 641, 651 A.2d 530 (1994)). Moreover, permissible inferences from words of general import cannot establish an express assumption of potential liability. *Hershey Foods Corp. v. General Electric Service Co.*, 422 Pa.Super. 143, 619 A.2d 285 (1992). "The intent to indemnify against claims by employees of the alleged indemnitor must clearly appear from the terms of the agreement." *Bethlehem Steel, supra*. An asserted indemnification provision must be carefully scrutinized and strictly construed. *Gerard, supra*.

¶ 21 The contract language at issue provides as follows:

> With respect to all services rendered hereunder, the agency [Bayada] shall operate as an independent contractor and not as an agent on behalf of [Lutheran Welfare Services] for any services performed by the agency [Bayada]. The agency [Bayada] shall, without limit, be liable for all of its acts and omissions performed by its employees. Furthermore, the agency [Bayada] agrees to maintain malpractice with a minimum of $1,000,000.00 insurance and to indemnify [Lutheran Welfare Services] in the event [Lutheran Welfare Services] is held liable for any acts or omissions of the agency [Bayada].

Agreement dated 2/1/91, attached as exhibit "C" to Complaint to Join, C.R., at 23.

¶ 22 In examining the above language we find it fails to sufficiently express Bayada's intent to assume liability for claims made by Bayada's employees. While the clause expresses intent to indemnify, the scope of the indemnification is limited to claims raised by Lutheran Welfare Services' patients and not those raised by Bayada's employees. The indemnification sentence cannot be read without considering the preceding sentences, which clearly evidence that the parties intended Bayada to operate as an independent contractor and not as an agent or employee of Lutheran Welfare Services. As such, Bayada agreed to assume all liability for the acts or omissions of Bayada's employees. Bayada's function under the agreement is to provide nursing services to Lutheran Welfare Services' patients. Therefore, the only indemnification expressly agreed upon is where Lutheran Welfare Services is held liable for injuries to one of its patients through the acts or omissions of Bayada or Bayada's employees. Furthermore, nowhere in this agreement does it say Bayada will indemnify Lutheran for injuries arising from Lutheran's own negligence. Thus, the language of paragraph 15 fails to remove Bayada's immunity from liability under the Act.

¶ 23 Order granting summary judgment reversed and case remanded for further proceedings. Order sustaining preliminary objections and dismissing third-party complaint affirmed. Jurisdiction relinquished.