**AL'S CAFE, INC., Appellant,**

v.

**SANDERS INSURANCE AGENCY,**

v.

**Gateway Underwriters, Inc.,**

v.

**Hull and Company, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2002.
Filed March 21, 2003.

Raymond J. Seals, Pittsburgh, for appellant.

Cathie J. Fagan, Pittsburgh, for Sanders Ins., appellee.

Gregory R. Webber, Pittsburgh, for Hull & Co., appellee.

Stehpen A. Hall, Pittsburgh, for Gateway Underwriters, Inc., appellee.

BEFORE: FORD ELLIOTT, ORIE MELVIN and GRACI, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Al's Café, appeals from the Order of the trial court granting summary judgment in favor of Sanders Insurance Agency (Sanders), Gateway Under-

writer's Inc. (Gateway) and Hull and Company, Inc. (Hull), Appellees. After careful review, we reverse.

¶ 2 The facts and procedural background as gleaned from the record may be summarized as follows. Appellant was contacted by Sanders regarding the purchase of a liquor liability insurance policy for the period of June 1, 1985 to June 1, 1986. Sanders eventually placed the policy of insurance with the Pine Top Insurance Company (Pine Top) through Gateway and Hull. The policy provided coverage up to $500,000.00. The annual premium for the policy was $8,250.00. Pine Top was an Illinois carrier not licensed to do business in the Commonwealth of Pennsylvania. On December 21, 1985, George Andreen suffered severe personal injuries in an automobile accident after an employee of Appellant's served him alcoholic beverages while he was visibly intoxicated. In August 1987, Mr. Andreen filed a dramshop suit against Appellant to recover for the injuries sustained in the accident. The claim advanced by Mr. Andreen was a covered peril under the liquor liability policy. Therefore, Appellant notified Sanders of the lawsuit and was informed that Pine Top was in liquidation and would not provide a defense to the Andreen claim.

¶ 3 If Pine Top was an admitted insurer licensed to do business in Pennsylvania then its liquidation would have triggered application of the Pennsylvania Property and Casualty Insurance Guaranty Association Act (the Act). 40 P.S. §§ 991.1801–1820. The Pennsylvania Property and Casualty Insurance Guarantee Association (the Association) provides protection to claimants and insureds up to $300,000.00 per claimant in the event of the financial failure of an admitted property and casualty insurance company as opposed to a nonadmitted carrier like Pine Top. Additionally, the Association, with respect to a covered claim, would be deemed the insurer and obligated to provide a defense. Appellant therefore retained private counsel to defend the claim filed by Mr. Andreen. On November 13, 1990, a verdict was returned in favor of Mr. Andreen in the amount of $326,000.00. Subsequently, delay damages of $102,437.98 plus interest were added to the verdict, resulting in a total judgment in the amount of $429,635.29 being entered against Appellant on November 30, 1990.

¶ 4 In April of 1989, Appellant commenced the instant action against its insurance agent, Sanders, asserting claims sounding in assumpsit and negligence. The gravamen of Appellant's complaint alleged Sanders was negligent in procuring a liquor liability policy from an unlicensed and financially unstable carrier. Specifically, Appellant averred that Sanders "knew or should have known that ... Pine Top ... was not licensed to do business in the Commonwealth of Pennsylvania and that [Appellant] was not obtaining the protection [Appellant] requested...." Complaint at ¶ 14. Additionally, Appellant asserted Sanders was negligent in the following particulars:

A. In failing to provide a 'liquor liability' insurance policy through an insurance company approved and licensed to do business in the Commonwealth of Pennsylvania, although such companies existed at the time the 'Pine Top Insurance Policy' was issued to [Appellant]; and

B. In failing to advise [Appellant] that the Pine Top Insurance Company was not licensed to do business in the Commonwealth of Pennsylvania and further that by issuing a policy from a non-licensed company, [Appellant's] rights to coverage were jeopardized; and

C. By issuing a policy through a company not licensed to do business in

the Commonwealth of Pennsylvania and in effect leaving [Appellant] uninsured for any claims based on 'liquor liability'.

Complaint at ¶ 15.

¶ 5 Sanders filed an Answer denying liability and joining as an additional defendant, Gateway, a licensed surplus lines insurance broker, alleging Gateway provided to Sanders, for Appellant's selection, a list of quotes from liquor liability insurers that included Pine Top and further sought indemnification and/or contribution. Gateway denied liability and joined Hull, another insurance broker, alleging Hull secured the liquor liability coverage from Pine Top and is therefore liable over for indemnification and/or contribution. Hull denied securing the liquor liability coverage from Pine Top and further denied any liability in its role as a surplus lines insurance broker. On January 8, 1991, Appellant assigned its interest in the present litigation to Mr. Andreen following judgment being entered on the Andreen verdict. In the interim, Appellant· and Mr. Andreen filed a claim in the Pine Top liquidation proceedings. Consequently, on January 11, 1992, the trial court granted Gateway's motion to stay the instant action until the liquidation claims were finalized. During the court ordered stay, Appellant and Mr. Andreen received four payments totaling $361,736.42 from the Illinois Liquidator due to Pine Top's insolvency. On March 30, 2001, the trial court granted Appellant's motion and re-listed this matter for the November 2001 trial list. Thereafter, Gateway, Sanders and Hull filed Motions for Summary judgment, which were granted by the trial court on September 12, 2001. This appeal followed.

¶ 6 Appellant presents the following question for our review:

DID THE LOWER COURT ERR AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO THE [APPELLEES,] INSURANCE AGENCY AND INSURANCE BROKERS[,] ON [APPELLANT'S] INSURED'S NEGLIGENCE AND CONTRACT CLAIMS FOR PLACING A LIQUOR LIABILITY INSURANCE POLICY WITH A FINANCIALLY PRECARIOUS UNLICENSED PENNSYLVANIA INSURER [SIC] CARRIER ON THE PRESUMED BASIS THAT PARTIAL PAYMENT OF A JUDGMENT AGAINST INSURED BY THE INSOLVENT INSURANCE COMPANY'S LIQUIDATOR BARRED INSURED'S CLAIMS?

Appellant's brief, at 4.

¶ 7 This Court's scope of review is plenary when reviewing the propriety of a trial court's entry of summary judgment. *Shumosky v. Lutheran Welfare Services,* 784 A.2d 196, 199 (Pa.Super.2001). Summary judgment is appropriate where there is no genuine issue of any essential fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). In considering the motion, the trial court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the moving party, who bears the burden of proving there is no genuine issue of material fact. *Chada v. Chada,* 756 A.2d 39 (Pa.Super.2000). An appellate court will reverse an order granting summary judgment only where there has been an error of law or clear abuse of discretion. *Murphy v. Duquesne University,* 565 Pa. 571, 777 A.2d 418 (2001).

¶ 8 The only argument presented in support of the Appellees' motions for summary judgment, and presumably the argument accepted by the trial court, since we were not given the benefit of a trial court opinion, rested upon Appellees' view that Appellant's sole claim for damages flowed from Appellant's loss of the protection pro-

vided by the Pennsylvania Insurance Guaranty Act (the Act). Appellees assert that if they had placed Appellant's liquor liability coverage with a Pennsylvania admitted insurer and it subsequently became insolvent then the Guaranty Act would have limited recovery to $300,000.00. Since Appellant has already recovered more than it would have under the Guaranty Act from the Illinois liquidation of Pine Top ($361,736.42), Appellant has not suffered any damages proximately resulting from the placement of insurance with a nonadmitted insurer. If this were the only claim being asserted by Appellant we would agree. However, a fair reading of the entire complaint reveals a much more expansive claim.

 ¶ 9 Appellant is not merely claiming a loss of the Guaranty Act's coverage limits but also loss of the policy limits of $500,000.00, which it paid for and now due to the company's insolvency is not available to pay the Andreen judgment. Since the amount of the Andreen judgment ($429,635.29) exceeds the amount recovered in the Pine Top liquidation ($361,736.42), Appellant remains personally liable for the balance of the Andreen judgment; and thus, its claim for damages has not been extinguished. Victims of tortious conduct must be compensated for all that they lose and all that they suffer from the tort of another. *Boggavarapu v. Ponist*, 518 Pa. 162, 167, 542 A.2d 516, 518 (1988). Accordingly, we find the trial court erred as a matter of law in granting summary judgment based on a lack of damages. However, our inquiry does not end here as damages are but one of the elements of a *prima facie* case of negligence.

 ¶ 10 We must now examine whether the averments of the complaint fall within the scope of the duty sellers of insurance have towards their customers. In this regard Appellees premise entitlement to summary judgment on the proposition that they have no duty to predict the Pine Top insolvency and instead place the liquor liability coverage with an admitted carrier. We do not view Appellant's complaint as attempting to fasten liability upon Appellees' ability to predict insolvency; rather, the gravamen of the complaint calls in question whether the agent or brokers have met their professional and statutory obligations with respect to the placement of the requested insurance.

¶ 11 It has long been the law in this Commonwealth that an insurance agent or broker has a duty not to misrepresent the coverage procured. In *Luther v. Coal Operators Casualty Co.*, 379 Pa. 113, 108 A.2d 691 (1954), *overruled on other grounds by Jarvis v. Workmen's Compensation Appeal Bd.*, 497 Pa. 379, 441 A.2d 1189 (1981), our Supreme Court stated:

> it is the law that where an insurance agent or broker promises, or gives some affirmative assurance, that he will procure or renew a policy of insurance under such circumstances as to lull the 'insured' into the belief that such insurance has been effected, the law will impose upon the broker or agent the obligation to perform the duty which he has thus assumed.

*Id.* 379 Pa. at 116, 108 A.2d at 692.[1] This standard of negligent misrepresentation

---

1. In the *Luther* case the rule thus announced did not apply because it was proven that the defendant had not assumed any duty to act for the plaintiff and had made no representations of any action taken upon which the plaintiff could reasonably rely. This holding

was overruled by *Jarvis*, because the Supreme Court determined that the rational of *Luther* no longer reflected the realities of insurance industry customs and the concomitant expectations of parties to insurance contracts. Rather, the Court noted that "[t]he insured

was also applied in *Rempel v. Nationwide Life Insurance Co.,* 471 Pa. 404, 370 A.2d 366 (1977), however, the Supreme Court specifically based the decision upon the Restatement of Torts § 522, which provides:

> One who in the course of his business or profession supplied information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if
>
> (a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and
>
> (b) the harm is suffered
>
> (i) by the person or one of the class of persons for whose guidance the information was supplied, and
>
> (ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith.

*Rempel,* 471 Pa. at 408, 370 A.2d at 367–368.

¶ 12 Similarly, this Court in *Laventhol & Horwath v. Dependable Ins. Assoc., Inc.,* 396 Pa.Super. 553, 579 A.2d 388, 391 (1990), *appeal denied,* 527 Pa. 648, 593 A.2d 420 (1991), opined:

> A plaintiff acquires a cause of action against his broker or agent where the broker 'neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault. . . .' The broker, in cases of default, is liable '[t]o the same extent as the insurer would have

been liable had the insurance been properly effected. . . .'

*Id.* at 391 (quoting 16A Appleman, Insurance Law and Practice § 8841, p. 180 (1981)). Moreover, federal courts applying Pennsylvania law have determined that insurance agents or brokers face liability when they fail

> to exercise the care that a reasonably prudent businessman in the brokerage field would exercise under similar circumstances and if the broker fails to exercise such care and if such care is the direct cause of loss to his customer, then he is liable for such loss unless the customer is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss.

*Consolidated Sun Ray v. Lea,* 401 F.2d 650, 656 (3rd Cir.1968); *see also, Fiorentino v. Travelers Ins. Co.,* 448 F.Supp. 1364 (E.D.Pa.1978).

■ ¶ 13 Additionally, the failure to comply with applicable statutes and regulations governing the selling of insurance may provide a basis for a finding of negligence *per se.* Specifically, at issue here is the Pennsylvania Surplus Lines Law, 40 P.S. §§ 991.1601–1625, which deals with the insuring of Pennsylvanians by companies not licensed as insurers in the state. Two of the stated purposes of the surplus lines law is "to protect the public interest by: (1) Protecting persons seeking insurance in this Commonwealth; and, (2) Permitting surplus lines insurance to be placed with **reputable and financially sound nonadmitted insurers** and export-

---

has learned to rely wholly upon notices from insurance carriers and their agents for information as to impending expirations of policies and the need for action to maintain coverage. Indeed, this reliance has been encouraged by insurers and their agents, who, in the interest of retaining business, have almost invariably furnished such notices despite the absence of an express request therefor by the insured." *Jarvis, supra,* 497 Pa. at 383, 441 A.2d at 1191.

ed from this Commonwealth pursuant to this article." *Id.* at § 991–1601 (emphasis added). An eligible surplus lines insurer is defined as "[a] nonadmitted insurer with which a surplus lines licensee may place surplus lines insurance under section 1604." Section 1604 provides:

Insurance may be procured through a surplus lines licensee from nonadmitted insurers if the following requirements are met:

(1) Each insurer is an eligible surplus lines insurer.

(2) The placement satisfies the criteria set forth in at least one of the following subparagraphs:

(i) The full amount or kind of insurance cannot be obtained from admitted insurers. Such full amount or kind of insurance or any portion thereof may be procured from eligible surplus lines insurers, provided that a diligent search is made among the admitted insurers who are writing, in this Commonwealth, coverage comparable to the coverage being sought.

(ii) The full amount or kind of insurance cannot be obtained from any admitted insurers because coverage comparable to the coverage being sought generally is not available in the authorized market.

(iii) The kind of insurance sought to be obtained from admitted insurers requires a unique form of coverage not available in the admitted market.

\* \* \* \*

Section 1605 further precludes the placement of "any coverage with a nonadmitted insurer unless, at the time of placement, such nonadmitted insurer [i]s of good repute and financial integrity." 40 P.S. § 991.1605(a)(1).

¶ 14 Although the question of whether an agent/broker has a duty under the circumstances presented by the facts averred in this case has not been previously addressed by the appellate courts of this Commonwealth, we find that, by synthesizing the above common law and statutory standards of care, an insurance agent's/broker's recognized duty to act with reasonable care, skill, and judgment extends to selection of the insurer and ascertaining whether it is reputable and financially sound and informing the insured of findings if investigation reveals evidence of financial infirmity, but the agent/broker nonetheless intends to place a policy with that insurer. Failure to comply with such duty may render the agent/broker liable to the insured that is unable to satisfy a claim due to the insolvency of the insurer. At least with respect to placement of insurance with a surplus lines insurer, it is clear that Pennsylvania law is in step with those jurisdictions recognizing that an insurance agent/broker has an obligation to investigate the financial soundness of the insurance carrier with which the agent/broker places insurance and to refrain from placing insurance with a carrier that the agent/broker knows or should know to be financially unsound. *See, e.g., Williams–Berryman, Ins. Co. v. Morphis,* 249 Ark. 786, 461 S.W.2d 577, 580 (1971) (stating that insurance broker must use "reasonable care, skill, and judgment with a view to the security or indemnity for which the insurance was sought"); *Nidiffer v. Clinchfield R.R.,* 600 S.W.2d 242, 246 (Tenn.Ct.App.1980) (holding that employer who undertakes to procure insurance for employees must use reasonable care to select solvent carrier); *Higginbotham & Assocs. v. Greer,* 738 S.W.2d 45, 47 (Tex.Ct.App.1987) (holding that agent may be liable for insured's lost claim due to carrier's insolvency if at time of procurement or at later time when insured could be protected agent knows or by exercise of reasonable diligence should

know insurer presents unreasonable risk); *Sternoff Metals Corp. v. Vertecs Corp.*, 39 Wash.App. 333, 693 P.2d 175, 180 (1984) (stating that "insurance broker has a common law duty to his insured not to negligently place insurance in a company [that] he knows or should know is presently insolvent"); and *Carter Lincoln–Mercury v. EMAR Group*, 135 N.J. 182, 638 A.2d 1288, 1298 (1994) (finding based upon well-recognized common law duty that an insurance broker and agent owed a duty to an insured to procure insurance with a financially stable insurer); *see also*, 16A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 8842, at 220–21 (rev. ed.1981) (opining that agent or broker is required to use reasonable care, skill, and judgment with view to security or indemnity for which policy is sought, and failure to do so may result in liability to insured for losses due to insolvency of insurer); 3 Mark S. Rhodes, *Couch on Insurance 2d* § 25:32, at 328 (stating that broker must exercise reasonable skill and diligence in selecting insurer and ascertaining that insurer is "of good credit and standing."), § 25.48 at 375 (stating "Ordinarily, an agent to procure a policy is liable where he places a risk in a company which is insolvent if the use of proper diligence would have revealed that fact before the insurance was procured. . . .") (rev. ed.1984); 2 J.D. Lee & Barry A. Lindahl, *Modern Tort Law* § 26.34, at 529 (rev. ed.1989) (stating "The agent [or broker] must obtain the requested coverage from a functioning company that the agent reasonably believes to be solvent." (footnotes omitted)).

▮ ¶ 15 With this standard in mind, we have examined the pleadings, depositions, answers to interrogatories, and expert reports on file in the light most favorable to Appellant. Such review reveals that Appellant has produced evidence of facts essential to its cause of action, which in a jury trial would require the issues to be submitted to a jury. Specifically, Appellant asserts that it relied upon the expertise of Sanders in purchasing the Pine Top policy, and that Sanders was negligent in failing to provide an insurance policy with a licensed Pennsylvania insurance carrier, and failed to disclose, as required by the surplus lines statute, that Pine Top was an unlicensed insurance carrier. Sanders admitted in its Answer to the Complaint that it did not know that Pine Top was a surplus lines carrier and not licensed in Pennsylvania at the time Gateway provided the Pine Top Policy to Appellant nor was it aware of Pine Top's precarious financial condition. The reasonable inference that can be drawn from the facts as averred by Appellant establish a cause of action for Appellees' failure to exercise the degree of care required of them in placing the liquor liability insurance in that the Appellees failed to investigate the financial condition of Pine Top even though they had a duty to do so. Moreover, they failed to inform Appellant that Pine Top was not licensed in Pennsylvania or of the financial condition of Pine Top, which prevented Appellant from making an informed and reasonable determination as to whether or not to select the insurance.

¶ 16 Appellant further asserts Sanders advised it that Pine Top was a Triple A rated company, a solid insurance company when it knew nothing about its financial condition, and even a cursory review of Pine Top's financial condition would have revealed that it had suffered and was suffering financial losses and in fact had a B rating, the lowest rating in the industry. Appellant has also provided two expert reports offering their opinions concerning the knowledge and skill required of an insurance agent or broker in procuring insurance coverage for a client and Appellees deviation therefrom. After careful review, we are of the opinion that the entry

of summary judgment was premature. Factual questions clearly remain as to whether Pine Top was actually considered a high-risk carrier, the giving and receiving of statutory notice of its status, whether the coverage in question could have been procured from an admitted insurer, whether Pine Top had been declared an eligible surplus lines insurer and, if so, whether the policy was placed by Sanders through an authorized agent. Resolution of these questions bears upon the determination of whether or not insolvency could have reasonably been foreseen. This can only occur upon a full inquiry into the facts. Accordingly, having determined that Appellees have failed to establish that there exists no genuine issue of material fact, we reverse the grant of summary judgment and remand for further proceedings.[2]

¶ 17 Order reversed. Case remanded. Jurisdiction relinquished.[3]

---

**2.** We further note that Gateway in its brief concedes there are factual questions concerning whether Appellees satisfied the requirements imposed by Surplus Lines Law. *See* Gateway's brief at 12.

**3.** We further deny Sander's Motion to Strike Appellant's Reproduced Record.