J-A23042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DENNIS CUNNINGHAM, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| FORBES REGIONAL HOSPITAL AND | : | |
| WEST PENN ALLEGHENY HEALTH | : | |
| SYSTEM, | : | |
| | : | |
| Appellees | : | No. 1961 WDA 2013 |

Appeal from the Judgment entered on December 10, 2013
in the Court of Common Pleas of Allegheny County,
Civil Division, No. GD 13-019985

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 21, 2014**

Dennis Cunningham ("Cunningham") appeals from the Judgment entered against him and in favor of Forbes Regional Hospital ("Forbes Regional") and West Penn Allegheny Health System ("West Penn") (collectively, "the Hospital").   We affirm.

The trial court aptly summarized the relevant history underlying the instant appeal as follows:

> ***Haluska v. Forbes Regional and West Penn Allegheny Health System***, GD-05-009134, [wa]s a lawsuit instituted in [the trial] court as a class action on behalf of persons who underwent a colonoscopy at Forbes Regional during the period between October 28, 2004[,] and February 26, 2005.   [] Cunningham was one of these persons.
>
> In performing the colonoscopy, Forbes Regional used equipment which it purchased in October 2004.   In February 2005, Forbes Regional discovered that it had not cleaned and

disinfected the new equipment in accordance with the directions of the manufacturer.

Forbes Regional sent a letter … to each person who underwent a colonoscopy during this period in which it advised these persons that equipment purchased in October 2004 was used during the patient's colonoscopy. The letter stated that [Forbes Regional] was concerned that it may not have completely disinfected the equipment prior to the patient's colonoscopy. In the letter, Forbes Regional advised the patient to undergo hepatitis and HIV testing in order to fully alleviate the patient's concerns. The letter said that this testing consisted of an initial blood test and a repeat blood test in six months. The letter said that these tests would be provided by Forbes Regional at no charge.

Upon receipt of the letter, most of the persons receiving the letter underwent the initial blood test and the repeat blood test in six months. **The testing revealed that none of the persons had contracted any illness.**

[] Cunningham was one of the persons who underwent the initial test and the repeat test.

The *Haluska* Class Action Complaint raised two counts: Count One—Negligence; and Count Two—Medical Monitoring. Count One is the only remaining count in the *Haluska* litigation.

Through a court order dated July 7, 2009, [the trial court] granted the Representative Plaintiffs' Motion for Class Certification only as to liability. [The court's O]rder provided that damage claims would be tried individually. [The trial court] defined the class as follows: "The 235 persons who: (1) had a colonoscopy performed on them by [the Hospital] with the Olympus CF-Q160AL colonoscope, (2) received a certified letter advising them that they were at risk of infection or illness, and (3) thereafter obtained a medical test or tests from [the Hospital]."

Trial Court Opinion and Order, 12/15/14, at 1-2 (emphasis added). After a trial on liability, the jury returned a verdict in favor of the class action plaintiffs and against the Hospital.

- 2 -

The trial court subsequently scheduled trial for thirty of the class action plaintiffs on the issue of damages. The trial court described what next transpired as follows:

> At [a] status conference, [the trial court was informed] that [the Hospital] had deposed the thirty plaintiffs whose cases [were to be] tried in September. In each deposition, [the Hospital's] counsel asked the plaintiff what damages the plaintiff was claiming. Each responded by describing mental anguish arising out of a fear that he or she may have contracted a disease or illness as a result of the exposure to the colonoscopy equipment that had been improperly cleaned. Counsel for the [p]laintiffs and [the Hospital] selected the deposition testimony of [] Cunningham as a good example of the testimony offered by the thirty plaintiffs.

*Id.* at 3 (footnote omitted).

In his deposition testimony, Cunningham acknowledged that he sought damages for the mental anguish caused by his belief that he might have contracted a blood-borne illness as a result of the Hospital's actions. N.T. (Cunningham Deposition), 6/12/13, at 25-26, 30. Based upon this testimony, the Hospital filed a Motion *In Limine* to exclude any testimony regarding mental anguish, which resulted from the fear of contracting a blood-borne illness. On September 5, 2013, the trial court granted the Hospital's Motion, relying on case law holding that "a person may not raise a claim for fear of contracting a disease that the person never contracted." Trial Court Opinion and Order, 12/15/14, at 5 (footnote omitted). The trial court's Order directed that, at trial, the class action plaintiffs shall not (1) "raise any claims for mental anguish from the fear of contracting any

disease;" and (2) "offer any testimony that would be relevant only to a claim of mental anguish from the fear of contracting a disease." *Id.* at 9.

On October 16, 2013, the trial court severed the claims of Cunningham from the remaining *Haluska* litigation. Following a bench trial, the trial court entered a verdict against Cunningham and in favor of the Hospital. Cunningham filed Post-Trial Motions, which the trial court denied. The trial court entered judgment against Cunningham and in favor of the Hospital on December 10, 2013. Thereafter, Cunningham filed the instant timely appeal, followed by a Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

Cunningham now presents the following claims for our review:

1. Did the Trial Court legally err in barring [Cunningham] from presenting evidence of mental anguish and loss of life's pleasures damages existing during the discrete blood testing period by failing to consider or apply the "impact rule" where [Cunningham] had suffered a bodily injury as a result of the Hospital's negligence?

2. Did the Trial Court legally err in barring [Cunningham] from presenting evidence of mental anguish and loss of life's pleasures damages limited to the blood testing period by requiring proof of "actual exposure" to an infectious disease even though [Cunningham] had not alleged a claim for negligent infliction of emotional distress [], but instead[,] one for negligence resulting in bodily injury?

Brief For Appellant at 3.

When reviewing the verdict from a bench trial, we must view the evidence of record in the light most favorable to the verdict winner to determine whether competent evidence supports the trial court's findings,

and whether it erred in reaching its conclusions of law. *McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 646 (Pa. Super. 2013). We afford the same weight to the trial court's findings of fact as we do a jury's verdict. *Id.* We reverse only if the trial court's findings of fact are unsupported by competent evidence or if the court erred as a matter of law. *Id.*

Cunningham challenges an evidentiary ruling by the trial court. "Generally, our standard of review of a trial court's evidentiary ruling is whether the trial court abused its discretion." *Zieber v. Bogert*, 773 A.2d 758, 760 n.3 (Pa. 2001). As the evidentiary ruling at issue turns on a question of law, however, our review is plenary. *Id.*

We address Cunningham's claims together. Cunningham claims that the trial court erred by failing to apply the "impact rule" to permit Cunningham "to present evidence of his mental anguish and loss of life's pleasures" traceable to the Hospital's negligent conduct. Brief for Appellant at 19. According to Cunningham, he seeks damages for negligence that resulted in bodily injury. *Id.* Cunningham argues that "the Hospital's negligence caused a physical impact and, therefore, [Cunningham] should have been permitted to introduce evidence of mental anguish (and also loss of life's pleasures) that was traceable to that negligent conduct." *Id.* at 24-25. Specifically, Cunningham asserts that

> the blood testing "impaired or altered" the structure of the body when the needle broke the skin and was inserted in a vein. This needle insertion is accompanied by pain and discomfort and sometimes bruising. Whether such a physical impairment might

- 5 -

be classified as "trivial or minor" is immaterial; it is a bodily injury nonetheless.

*Id.* at 28.

Cunningham additionally argues that the trial court erred in considering his cause of action as one for negligent infliction of emotional distress. *Id.* at 46. Rather, Cunningham asserts, he seeks mental anguish damages resulting from bodily injury. *Id.* at 47. Cunningham distinguishes this Court's holding in ***Shumosky v. Lutheran Welfare Servs. of Northeastern Pa.***, 784 A.2d 196, 200 (Pa. Super. 2001), arguing that it does not apply where a plaintiff seeks "pain and suffering" damages, which includes a component of mental anguish. Brief for Appellant at 47. Cunningham contends that his claims

> are for "pain and suffering" and loss of life's pleasures caused by negligent conduct that resulted in physical injury, not [negligent infliction of emotional distress]-type emotional distress that in turn cause[s] physical manifestations such as headaches or insomnia.

*Id.* at 50.

"The courts of this Commonwealth have long permitted recovery of emotional distress damages that are accompanied by direct physical injury caused by a defendant's negligence." ***Shumosky***, 784 A.2d at 200. "These so-called 'parasitic' damages are allowed even where the physical injury is relatively minor." *Id.* (citation omitted). In ***Shumosky***, where a plaintiff nurse had been pricked by a hypodermic needle, used by a terminally ill AIDS patient, this Court stated the following:

[W]here . . . a plaintiff sustains bodily injuries, even though trivial or minor in character, which are accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff, then mental suffering is a legitimate element of damages. **Accordingly, parasitic damages for fear of AIDS are available where there is a verifiable causal connection between the injury and the possible development of AIDS.** Here, … [the plaintiff] alleges an objective, measurable, and observable physical injury, albeit a needle-stick. **Thus, provided [the plaintiff] can prove [that the defendant] was negligent and [plaintiff's] injuries were proximately caused, she may recover for the emotional distress that consequentially flowed from this alleged physical injury.**

*Id.* at 201 (internal quotation marks and citations omitted, emphasis added).

Regarding causation, the Court in **Shumosky** applied an objective standard, which requires that a plaintiff allege "actual exposure" to the disease in question. *Id.* "Actual exposure" consists of two elements: (1) a scientifically accepted method of transmission of disease and (2) the presence of a positive specimen. *Id.*

In the negligence count of his Complaint, Cunningham averred that he underwent a colonoscopy with an improperly cleaned and disinfected colonoscope. Complaint at ¶ 29. In subjecting Cunningham to a colonoscopy with an improperly cleaned colonoscope, the Complaint alleges, the Hospital was negligent and acted with reckless indifference to the safety

- 7 -

of its patients.[1]  ***Id.*** at ¶ 30.  The Complaint averred that the Hospital's

negligence caused the following damages:

    a.  Pain and suffering;

    b.  Mental anguish;

    c.  Embarrassment and humiliation; and

    d.  Inconvenience.

***Id.*** at ¶ 31.

In his Complaint, Cunningham also averred that he was offered two

blood tests, one immediately and one six months later.  ***Id.*** at ¶ 34.

Regarding these blood tests, Cunningham claimed only that they were

inadequate.  ***Id.*** at ¶¶ 35-37.  Contrary to Cunningham's argument in his

brief, his Complaint did not allege that his mental anguish flowed from any

bodily injury.  The Complaint does not aver an objective, verifiable causal

nexus between the Hospital's negligence and the mental anguish damages

suffered by Cunningham.  Rather, Cunningham's Complaint avers that

---

[1] Specifically, Cunningham averred that the Hospital was negligent in (a) failing to inform themselves of the properly cleaning and disinfecting of the colonoscope; (b) failing  to implement rules, regulations and protocols regarding the cleaning and disinfecting of the colonoscope and other instruments used in the Hospital; (c) failing to enforce rules, regulations and protocols regarding the cleaning and disinfecting of the colonoscope; and (d) permitting an improperly cleaned and disinfected colonoscope to be used on Cunningham; (e) failing to properly clean and disinfect the colonoscope before using it on Cunningham; (f) failing to recognize their use of the improperly cleaned and disinfected colonoscope before February 26, 2005; and (g) failing to timely notify Cunningham that he had been subjected to a colonoscopy with an improperly cleaned and disinfected colonoscope. Complaint at ¶ 30.

mental anguish, *i.e.*, the fear of contracting a blood-borne illness, was the result of the Hospital's use of an improperly cleaned colonoscope, and not the result of the subsequent blood tests. *Id.* at ¶¶ 29-37.

In his deposition, Cunningham testified that his mental anguish was caused by the fear of contracting a blood-borne illness, caused by the Hospital's negligence in cleaning the colonoscope. N.T. (Cunningham Deposition), 6/12/13, at 20. Cunningham testified that upon receiving a registered letter from the Hospital, informing him of the problem with the colonoscope, he felt "violated." *Id.* at 16. According to Cunningham, he felt afraid, and stated that "it was almost like a death sentence being read." *Id.* at 17. Cunningham testified that he did not believe the letter's assurance that the chance of a problem "is miniscule." *Id.* at 18. Regardless of that assurance, Cunningham remained concerned that he might have contracted HIV or another blood-borne illness. *Id.* at 19. Cunningham further testified that he experienced this fear *prior* to scheduling the blood test. *Id.* at 20. Cunningham presented no evidence of mental anguish caused by the actual blood test or resulting from any other bodily injury. Rather, Cunningham's testimony stated that his damages were mental anguish, and this mental anguish was caused by the fear of contracting a blood-borne illness. *Id.*

When testifying about his damages, Cunningham stated the following:

> Q. [The Hospital's counsel]: Now, what damages are you claiming in this case, [] Cunningham?

A. [Cunningham]: Just mental anguish would maybe be the broadest term.

Q. And that's mental anguish caused by the fact that you believe you might have contracted HIV?

A. Yes, it's like a death sentence for most people, and to be exposed to a potential death sentence when you're innocent, it just made no sense.

Q. Are there any other damages that you're claiming, or is it basically your fear of having contracted HIV?

A. As the broadest category, that would be correct.

Q. Is that it?

A. Stress, I mean, it's all in that group I would think.

Q. All related to the fact that you thought you might have contracted HIV?

A. Yes.

N.T. (Cunningham Deposition), 6/12/13, at 25-26.  Cunningham conceded that he did not contract a blood-borne illness resulting from his exposure to the colonoscope.  *Id.* at 31.

The record reflects that, as a matter of law, Cunningham failed to establish the requisite causal nexus between the Hospital's negligence and his claimed injuries.  By his Complaint and his deposition testimony, Cunningham avers that the Hospital's negligence in cleaning and disinfecting the colonoscope, potentially exposing him to blood-borne illnesses, caused his mental anguish.  Cunningham has not averred or demonstrated actual exposure to AIDS, or another blood-borne illness, and such exposure cannot

- 10 -

be inferred from the allegations in the Complaint, or Cunningham's deposition testimony. **See Shumosky**, **supra** (wherein a nurse was pricked by a needle used by an AIDS patient, a scientifically recognized means of transmitting AIDS). Because Cunningham failed to establish causation, we discern no error or abuse of discretion by the trial court in granting the Hospital's Motion *In Limine*, which precluded claims and evidence of mental anguish from the fear of contracting disease.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2014